## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**RASHID JAHM,**                             **CASE NO. 05-CV-11638-JLT**

Plaintiff,                                   **Hon. Joseph L. Tauro**

v

**DENNIS D. LEIBER, ET AL**

Defendants.

_____/

### DEFENDANT GEORGE L. McCARGAR'S BRIEF
### IN SUPPORT OF MOTION TO DISMISS UNDER RULE 12(b)
### AND MOTION FOR JUDGMENT UNDER RULE 12 (c)

Defendant, George L. McCargar, III submits the following brief in support of his motion

to dismiss under Fed R. Civ. P. 12(b) and motion for judgment on the pleadings under Fed. R.

Civ. P. Rule 12(c).

### I.    FACTUAL BACKGROUND

Defendant, George L. McCargar, III ("McCargar") is an individual and an attorney

licensed by the State of Michigan who resides in Grand Rapids, Michigan. McCargar was an

associate in the law firm of Bransdorfer & Bransdorfer, PC. In approximately June of 2000, that

firm agreed to represent the Plaintiff, Rashid Jahm ("Plaintiff"), in a personal injury action

arising from an automobile accident.

One of the principals and shareholders of the firm Bransdorfer & Bransdorfer, PC was

Stephen C. Bransdorfer ("Bransdorfer"). Bransdorfer has also been named as a Defendant in this

in this action.[1]  As an associate of the firm Bransdorfer & Bransdorfer, PC, McCargar assisted in

---

[1]      Bransdorfer is a highly recognized attorney in the State of Michigan. He was formerly President of the State
of Michigan Bar Association (1974-1975), President of the Western Michigan Chapter of the Federal Bar Association
(1983-1984) and, among numerous other distinguished professional accomplishments, served as a Deputy Assistant
Attorney General in charge of the Torts Section of the Civil Division of the Department of Justice.

the representation of Plaintiff in his personal injury case. McCargar's duties primarily involved matters relating to discovery, including taking depositions.

In October of 2000, the firm of Bransdorfer & Bransdorfer, PC merged with the firm Russell & Batchelor, LLP and formed Bransdorfer & Russell, LLP.[2] McCargar continued to work as an associate for that new firm. However, after the merger, McCargar had very little involvement in Plaintiff's personal injury case.

Ultimately, Plaintiff's personal injury action was tried before a jury in the State of Michigan, 17th Circuit Court, before the Honorable Dennis B. Leiber, Circuit Judge, Case No. 00-08794-NI. On September 9, 2002, the jury rendered a verdict in favor of the Defendants in the personal injury case. A Judgment was entered for the Defendants on October 4, 2002. McCargar had no involvement whatsoever with the jury trial or post judgment proceedings. Plaintiff was upset by the unfavorable outcome of the trial.

On October 4, 2002, upon a motion for withdrawal filed by Bransdorfer & Russell, LLP as a successor to Bransdorfer & Bransdorfer, P.C., an Order Authorizing Withdrawal of Counsel for Plaintiff Rashid A. Jahm was entered in Plaintiff's personal injury case. A copy of that Order is attached to this brief as Exhibit 1 and to the Answer filed by McCargar. Accordingly, neither McCargar nor the firms Bransdorfer & Bransdorfer, PC or Bransdorfer & Russell, LLP provided any legal services on behalf of Plaintiff after October 4, 2002, the day of entry of the Order Authorizing Withdrawal of Counsel. At the absolute latest date, McCargar discontinued serving the Plaintiff in a professional manner upon entry of the Order Authorizing Withdrawal on October 4, 2002, which was more than 2 years before Plaintiff filed his complaint.

Mr. Jahm has now filed a complaint apparently under 42 U.S.C. §1983 and 1985. The complaint is, for the most part, incomprehensible, but appears to be directed at various people involved in his personal injury case, including the Judge that presided at his trial and the opposing counsel, as well as others not remotely connected to that case, such as the Governor of the State of Michigan.

---

[2]    In October 2003, Stepehen C. Bransdorfer retired from the practice of law. The law firm Bransdorfer & Russell, LLP has been dissolved and is no longer in existence.

2

A copy of the complaint attached as Exhibit 2 and bearing a U.S. District Court date stamp indicating that it was filed on November 22, 2005 was received at McCargar's business address by U.S. mail. No summons was delivered with the complaint nor was the notice required by Fed. R. Civ. P. 4(d)(2) delivered. The complaint makes allegations at page 17 that appear to be based on attorney malpractice claims. (Exhibit 2, Complaint at 17, ¶ 57.) At page 17, ¶ 58 of the complaint, Plaintiff states: "George L. McCarger (sic) (P45588) and Stephen Bransdorfer (P11133) was (sic) fired by Plaintiff prior to sep. 15th 2002." (Exhibit 2, Complaint at 17, ¶ 58.)

Accordingly, as more fully explained below, Plaintiff's action with respect to McCargar must be dismissed under Fed. R. Civ. P. 12(b) because: a) this Court lacks jurisdiction over the subject matter and person; b) the complaint fails to state a claim upon which relief can be granted; c) service of process is insufficient; and d) venue is improper.

Furthermore, McCargar is entitled to judgment on the pleadings because: a) the complaint makes no factual or cognizable federal claims against McCargar and b) the complaint admits that McCargar was "fired prior to sep. 15th 2002." Accordingly, by Plaintiff's own admission, McCargar discontinued serving the Plaintiff in a professional capacity more than 2 years before the filing of the complaint and Plaintiff's apparent professional malpractice claims are barred by Michigan's 2 year statute of limitations applicable to those claims under MCL §600.5805(5).

## II.    LAW AND ARGUMENT

### A.    Motion To Dismiss Under Rule 12(b).

#### 1.    This Court Lacks Jurisdiction.

Plaintiff's federal claims appear to be based on 42 U.S.C. 1983 and 1985, under which he generally alleges violations of his federal constitutional rights. To the extent Plaintiff's federal claims are directed at McCargar, this Court lacks both subject matter jurisdiction and jurisdiction over McCargar because, at all relevant times, McCargar was (and is) an individual and attorney in private practice.

3

During the time that McCargar was employed as an associate of the firms that represented Plaintiff in his personal injury action, neither McCargar's nor the firms' actions were ascribable to the State of Michigan or actions taken under color of state law. "To maintain a Section 1983 action, state action must be present." *Barrios-Velazquez v. Asociacion De Empleados Del Estado Libre*, 84 F3d 487, 495 (1st Cir. 1996). In other words, there can be no federal claim against McCargar under 42 U.S.C. 1983 because he did not, and could not, use the power of the state to deprive Plaintiff of his constitutional rights. *See Robinson v. Bergstrom*, 759 F2d 401,404 (7th Cir. 1978) ("Accordingly, where state action is found lacking, the section 1983 complaint is properly dismissed for lack of subject matter jurisdiction."); *see also Swank v. Patterson,* 139 F2d 145,146 (9th Cir. 1943) (holding that there was no federal question jurisdiction where a complaint alleged deprivation of Constitutional rights: "Appellant complains, not of state action, but of the actions of individuals - appellees. The complaint does not state that appellees are, or ever were, officers agents or employees of the State, or that they are, or ever were, empowered to act for or on behalf of the State, or that they have at any time so acted.")

As the Fourth Circuit Court of Appeals stated in *Woodhouse v. Budwesky*, 70 F2d 61 (4th Cir. 1934):

> No federal question is raised by the bill. It alleges oppressive prosecution of claims by a firm of attorneys, conspiracy between them and the judge of a state court, who is named as a defendant, and abuse of process and procedure of the state court. . . . While there are a number of charges in the bill that the rights guaranteed to the plaintiff by the Constitution of the United States have been violated by defendants, no facts are alleged showing the power of the state has been used to deprive plaintiff of such constitutional rights. . . . . And it is well settled that it is not sufficient to sustain jurisdiction that the pleadings merely assert that conduct complained of violates constitutional rights. It must set forth facts from which the court can see that such rights have been violated.

*Id* at 62.

According, this court lacks both subject matter and personal jurisdiction, and Plaintiff's claims must be dismissed.

2.    **The Complaint Fails To State A Claim Upon Which Relief Can Be Granted.**

Because McCargar was an individual and not acting under color of state law, the complaint must also be dismissed for failure to state a claim upon which relief can be granted. McCargar's only involvement and relationship with Plaintiff was in the capacity of an associate employed by a law firm that represented Plaintiff in his personal injury automobile accident case. Other than general and conclusory allegations, the complaint fails to state any facts with respect to McCargar which could possibly establish the "state action" requirement which is essential for a section 1983 claim. *See Barrios-Velazquez v. Asociacion De Empleados Del Estado Libre*, *supra*.

Similarly, the complaint fails to state any factual allegations with respect to McCargar upon which a claim under 42 U.S.C. 1985 can be made. Most notable is the absence of any allegation, factual or otherwise, that McCargar acted with a racial or class based discriminatory animus. A plaintiff may recover under § 1985(3) "[o]nly when the conspiratorial conduct of which he complains is propelled by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Aulson v. Blanchard*, 83 F3d 1, 3 (1st Cir. 1996) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1978, 29 L.Ed.2d 338 (1971).

Furthermore, to the extent that state law professional malpractice claims are being made against McCargar, the complaint states that the Plaintiff fired McCargar "prior to sep. 15th 2002." (Exhibit 2, Complaint at 17, ¶ 58.) In addition, an Order Authorizing the Withdrawal Of Counsel and terminating the attorney client relationship with Mr. Jahm was entered on October 4, 2002. (Exhibit 1.)

MCL 600.5805(5) provides: "[T]he period of limitations is 2 years for an action charging malpractice." A claim based on malpractice of a person who is a member of a state licensed profession "[a]ccrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." MCL

5

§600.5838(1).[3] By Plaintiff's own admissions set forth in the complaint, the attorney-client relationship was terminated "prior to sep. 15th 2002." At the very latest, McCargar discontinued serving Plaintiff on October 4, 2002, the date the Order granting withdrawal as Plaintiff's attorney was entered in the state personal injury action.

Accordingly, to the extent the complaint alleges professional malpractice claims, all such claims against McCargar are barred by the applicable statute of limitations and the complaint must dismissed for failure to state a claim upon which relief can be granted.

### 3. Improper Venue

28 U.S.C. §1391 governs venue. The statute provides in part that a civil action where jurisdiction is not found solely on diversity of citizenship, may be brought only in:

(1)   a judicial district where any defendant resides, if all defendants resides in the same state.
(2)   a judicial district in which  a substantial part of the events or omissions giving rise to the claim occurred. . . . .
(3)   a judicial district in which any Defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. 1391(b)

The complaint alleges federal question jurisdiction under 28 U.S.C. 1331. (Exhibit 2, Complaint at 7.) None of the defendants named in the complaint reside in the State of Massachusetts. All the defendants either reside or conduct business in the State of Michigan. Moreover, all of the events and purported omissions allegedly giving rise to the Plaintiff's claims took place in the State of Michigan. Accordingly, this case must be dismissed because venue is not properly in this Court.

### 4. Insufficiency of Service of Process.

Fed. R. Civ. P. 4(c) provides that "A summons shall be served together with a copy of the of complaint." No summons was served on McCargar nor was the notice required by Fed R. Civ.

---

[3]   For the Court's convenience, copies of MCL §600.5805(5) and §5838(1) are attached as Exhibit 3.

P. 4(d)(2) delivered. Furthermore, Fed. R. Civ .P. 4(e) provides for the manner of service on an individual. McCargar was not personally served as required by that Rule nor was he served in accordance with the laws of the State of Michigan governing service of process on an individual.

Accordingly, without waiving objections to the insufficiency of the service of process, this case must be dismissed with respect to McCargar pursuant to Fed. R. Civ. P. 12(b)(5).

### B.    Motion For Judgment Under Rule 12(c).

For the reasons set forth at section A.2 above, McCargar is entitled to judgment on the pleadings. As an associate of a private law firm that represented Plaintiff in a state personal injury action, McCargar was not, and could not, be acting under color of state law. Moreover, the complaint makes no factual or cognizable allegations regarding McCargar under 42 U.S.C. 1985. In addition, Plaintiff admits that the attorney-client relationship was terminated by the Defendant "prior to sep 15th 2002." Under the applicable Michigan statute of limitations for malpractice, Plaintiff's apparent pendant state claims are barred by the two-year statute of limitations. Accordingly, Defendant McCargar, requests entry of judgment with prejudice in his favor and against Plaintiff as to all claims made in the complaint.

### III.    CONCLUSION

This is a frivolous action warranting sanctions filed against the Governor of the State of Michigan, Circuit Court Judges, and others who were involved in the Plaintiff's state personal injury action. There is absolutely no basis for the federal claims, nor can there be. Moreover, the complaint makes no factual allegations supporting Plaintiff's claims with respect to Defendant McCargar. One of the few intelligible statements made in the complaint is that McCargar was "fired" by Plaintiff more than 2 years before the filing of his complaint. Thus, by Plaintiff's own admission, Michigan's 2 year statute of limitations bars any professional malpractice claims regarding the attorneys who represented him in his personal injury case.

Accordingly, for all of the reasons stated above, Defendant McCargar respectfully requests entry of an order dismissing with prejudice the above captioned case or, in the alternative, entry of an order granting judgment with prejudice in his favor regarding all claims being made by Plaintiff.

Respectfully Submitted,

Dated: ___1/3/06___

George L. McCargar, III (P45588)
161 Ottawa Ave. N.W., Ste. 411-S
Grand Rapids, Michigan 49503
(616) 774-8422

8

IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

RASHID A. JAHM,

Plaintiff,

v.

CITY OF WALKER, a Michigan Municipal
Corporation and EUGENE E. KARS,

Defendants.

_____/

File No.: 00-08794-NI

HON. DENNIS B. LEIBER



**EXHIBIT**
**1**

BRANSDORFER & RUSSELL, LLP
Stephen C. Bransdorfer (P11133)
George L. McCargar III (P45588)
Attorneys for Plaintiff
161 Ottawa Avenue, NW
Suite 411-S
Grand Rapids, MI 49503
(616) 774-8422

SMITH, HAUGHEY, RICE & ROEGGE
Craig R. Noland (P30717)
Attorneys for Defendant
200 Calder Plaza Building
250 Monroe, NW
Grand Rapids, MI 49503-2251
(616) 774-8000

_____/

## ORDER AUTHORIZING WITHDRAWAL OF COUNSEL
## FOR PLAINTIFF RASHID A. JAHM

Trial by jury in this cause having been completed and Bransdorfer & Russell, LLP, as

successor to Bransdorfer & Bransdorfer, P.C., having filed a Motion for Withdrawal as Counsel

for Plaintiff Rashid A. Jahm in accordance with Rule of Professional Conduct 1.16(b)(3) and

(b)(5) and the Court having heard said counsel and having heard Plaintiff at the hearing on this

matter held October 4, 2002 and being fully advised in the premises,

IT IS ORDERED that the Motion to Withdraw as Counsel for Plaintiff, as to Bransdorfer

& Russell, LLP and Bransdorfer & Bransdorfer, P.C., be and the same is granted with said

counsel to take all necessary actions in accordance with Rule of Professional Conduct 1.16(d).

Dated: October 4, 2002

DENNIS B. LEIBER
_____

Hon. Dennis B. Leiber

Attest: A True Copy

EXHIBIT
2
Def. McCauser

# UNITED STATES DISTRIC COURT

### District of Massachusetts
1 courthouse way, suite 2300
Boston, Massachusetts. 02210
617-748-9152

FILED
IN CLERKS OFFICE

2005 NOV 22  A II: 14

U.S. DISTRICT COURT
DISTRICT OF MASS.

Rashid Jahm
 Pro se Plaintiff
Vs

**Dennis D. Lieber**, in his official
And individual capacity,
Circuit Court Judge
    Defendants-Appellees

**Mary Kelly**, in her official
And individual capacity,
Deputy County Circuit Court Clerk
    Defendants-Appellees

**Craig Noland (P30717)**
Smith, haughey,Rice, & Roegge
200 calder Plaza Bldg.
250 monroe N. W.
Grand Rapids, MI. 49503
(616) 774-8000
    Defendant-Appellees.

**Shawn M. Breimayer**, CSR (6888)
180 Ottawa NW Suite10500D
Grand Rapids, MI 49503
Phone: (616) 632-5012
    Defendant-Appellees

**George S. Buth** in his official and
Individual capacity Circuit Court Chief Judge
180 Ottawa NW Suite 11200A
Grand Rapids, MI 49503
Phone: (616) 632-5020
    Defendant-Appellees

State of Michigan, ex rel.
And City of Walker A Michigan
Municipal Corp.
    Defendants-Appellees.

Case No:05CV11638-JLT
Jury Trial Demanded

180 Ottawa NW Suite10500D
Grand Rapids, MI 49503
Phone: (616) 632-5012

 180 Ottawa NW Suite 2400
Grand Rapids, MI 49503
Phone: (616) 632-5480

Michigan Department of Attorney
General Mike Cox.
G. Mennen Williams Building,
7th Floor 525 W. Ottawa St.
P.O. Box 30212

Lansing, MI 48909
Main Number (517) 373-1110

Governor Jennifer M. Granholm
P.O. Box 30013
Lansing, Michigan 48909
Phone (517) 373-3400

Paul J. Fischer, in his official
And his individual capacity
Executive Director
   Defendant-Appellees.

Michigan Judicial Tenure Commission
3034 West Grand Blvd Suite 8-450
Detroit, MI 48202
Phone: (313) 875-5110

Catherine Garcia- Lindstorm in his official and individual capacity
Walker Police Department
4343 Remembrance Rd.Walker, MI. 49544-1181
Phone:(616) 791-6802
   Defendant-Appellees

Kemper Insurance president Claim Dept
One Kemper Lane Long Grove, IL. 60049
Claim No.169DU024091 Claim No. 565AU109329
Phone:(847) 320-3844
   Defendant-Appellees

Steven C. Couch Asst.Vice President Claim
Great American Insurance.
Professional Liability Division
1755 north Collins Boulevard
LB # 506
Richardson, TX. 75080-3638
Phone: (972) 437-7101
   Defendant- Appellant

Midwest Claim Services
Brian Cardecia vice president or who might be concern
1700 Opdyke Court, Auburn hills, MI 48326
1-800-225-6561
   Defendant- Appellant

- George L. McCarger  (P45588) and Stephen C. Bransdorfer (P11133)
 161 Ottawa Ave. N.W. Ste 411-S
 Grand Rapids, MI. 49503-2898
 Phone:(616) 774-8422
   Defendant- Appellant

Broad Spire Claim No.169DU324091, 565AU109329
Kathy Griffin
P.O. Box 8141
300 E Center Dr suite 100
Vernon hills, IL. 60061
Phone:(800) 239-8692

## SOMMON, COMPLAINT

Plaintiff believes no judicial immunity for violation of plaintiff's civil right and Acts in

excess of judicial authority which constitutes misconduct, particularly when Judge

Dennis Lieber and other State employees deliberately disregards the requirements of

fairness and due process. See **\*Cannon v. Commission on Judicial Qualifications,**

(1975) 14 Cal. 3d 678, 694

In 1996, Congress passed a law to overcome this ruling, which stated that judicial

immunity doesn't exist; citizens can sue judges for prospective injunctive relief. See

***Pulliam v. Allen***, 466 U.S. 522 (1984); 104 S. Ct. 1781, 1980, 1981, and 1985

Eleventh Amendment does not protect state officials from claims for prospective relief

when it is alleged that state officials acted in violation of federal law. See **Warnock v.
Pecos County**, Texas. 88 F3d 341 (5th Cir. 1996)

Judge refused to hear plaintiff motion which he said on Oct 4th 2002 he will hear

plaintiff motion. See **Exhibit** C, Page 3

Judge allowed tampered picture's CD in to the trial presented by defendant attorney

Craig Noland. See **Exhibit** C, Page 4

- .. When Presiding judge Dennis Lieber has been acted out of judicial duties. He has enforced a void order which he did not have jurisdiction to act, (an order issued by a judge without jurisdiction), that become trespassers of the law, and are engaged in treason (see below).

## TREASON

Whenever a judge acts where he/she does not have jurisdiction to act, the judge is engaged in an act or acts of treason. **U.S. v. Will**, 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980); **Cohens v. Virginia,** 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821)

Note: Any judge who does not comply with his oath to the Constitution of the United States wars against that Constitution and engages in acts in violation of the supreme law of the land. The judge is engaged in acts of treason.

The U.S. Supreme Court has stated "no state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it". See also **In Re Sawyer,** 124 U.S. 200 (188); **U.S. v. Will,** 449 U.S. 200, 216, 101 S. Ct. 471, 66 L. Ed. 2d 392, 406 (1980); **Cohens v. Virginia,** 19 U.S. (6 Wheat) 264, 404, 5 L. Ed 257 (1821). **Cooper v. Aaron,** 358 U.S. 1, 78 S. Ct. 1401 (1958)

Plaintiff was imposed sanctions by Judge Dennis Lieber because of Plaintiff exercise of constitutional rights. See **Sherar v. Cullen**, 481 F. 2d 946 (1973)

Plaintiff's Denial of Constitutional right and refusing to hear plaintiff's motion by Judge Dennis Lieber and Judge Butt were a denial of due process of law". **Simmons v. United States**, 390 U.S. 377 (1968)

Plaintiff complaints of the above named Defendants and for causes of action against them, allege as follows:

### NATURE OF THIS ACTION

1. This is a federal civil rights action pursuant to 42 U.S.C. § 1983 and § 1988, and the federal constitutional provisions and statutes referred to herein, by all the above names mentions, as defendants are Michigan State employees and Others including defendant attorney Craig Noland (P30717), and including insurance companies together has conspire against plaintiff.

2. Plaintiff seeks compensation from Defendants in the form of special, general, consequential, and punitive damages – except as prohibited by law – including the other fees and costs reasonably incurred in the prosecution of this action.

3. The damages Plaintiff seeks from Defendants are the proximate, direct and consequential result of Defendants' willful, and/or malicious, and/or intentional, and/or reckless and/or deliberately indifferent actions and/or omissions, individually or in concert with others, which violated Plaintiffs' federal constitutional and statutory rights including – but not limited to – their conduct in:

4. Unlawfully depriving, and conspiring to deprive, Plaintiff of his well-established

federal constitutional and statutory rights and his rights to enjoy the due process and equal protection of law and the equal application of the law.

Now comes plaintiff who has been victimize by Michigan state judicial and plaintiff has exhaust his state level last hope when Michigan Supreme Court has fail to protect his constitutional right. Plaintiff's complaint contains several claims, all of which remain at issue. All defendants deprived plaintiff from his constitutional right. Plaintiff seeks constitutional and This Court has jurisdiction over all defendants to stop them not to deprive plaintiff from constructional right.

The first is a claim under 42 U.S.C. Section 1983 in which plaintiff alleges that all conspiring parties, acting under color of state law, deprived plaintiff of his constitutional right under equal protection of the laws under the Fourteenth amendment. The second is a claim under 42 U.S.C. Section 1985(3) in which plaintiff alleges that all parties conspired to deprive plaintiff of his rights to due process, equal protection of the laws and of equal privileges and immunities under the laws. The third is a state law claim in which plaintiff asserts a claim of intentional infliction of emotional distress based primarily on the alleged incident of plaintiff's Oct. 31.1999 car accident.

Plaintiff is requesting justice, due process and fair trial from this honorable court under a fair jury.

Plaintiff, as and for his complaint, alleges the following upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters. Plaintiff's information and belief is based, during Auto accident (plaintiff was hit from passenger side by police car) and plaintiff filed motions and complaints against Frauds, breach of protected order as In Pro se against defendant Craig Noland but response from the trial judge.

Judge D. Lieber did not hear plaintiff's motions and complaints intentionally and further conspire with other parties to victimize plaintiff and using his influence to get court administrative staffs to do misconduct against plaintiff which show proof on the face of the court records and other documents and confusing the case further tampering with transcript which is available for proof. Plaintiff believes that, in addition to the evidence contained in the court records himself or herself; substantial evidentiary support will exist for the allegations set forth after a reasonable opportunity for discovery.

## Jurisdiction of this Court

Jurisdiction of this action is based upon federal question jurisdiction pursuant to Title 28, United States Code, Sections 1331, 1331(a) and the Due Process Clause of Art. IV of the United States Constitution. This court has jurisdiction over plaintiff's common law claims, infra, and venue is proper pursuant to Title 28, United States Code, Section 1391. The issue before this court is the violation of the Plaintiff's civil rights pursuant to

Title 42 U. S. C. § 1983 and 1985(2) and raises federal questions and constitutional issues.

1. This is a civil rights case brought under Title 42 U. S. C. § 1983 and 1985(2) for violations of the Plaintiff's rights to due process of law under the 14th Amendment of the United States Constitution and for obstruction of justice. Plaintiff contends that these Defendants conspired with State Actors acting under color of state law to undermine the Plaintiff's right.

2. The State Actors allowed defendant Craig Noland in his alleges case of frauds, defamations, slander per se case to act as legal counsel for breach and violation of plaintiff's protected order in the same case.

3. The state actors allowed defendant Craig Noland to present altered and tampered pictures of plaintiff Auto accident case of Oct, 31.1999.

4. The state actors allowed the defendant Craig Noland commit the crimes of perjury, tampering with physical evidence, and tampering with transcripts of the trial together with Court reporter Shawn M. Breimayer CSR (6888) a judicial process in order to conceal their fraud.

5. The State Actors, which included few state employees, state judges and all parties tricked, conspired and manipulated them into a conspiracy to conceal the breach constitutional conduct so as to allow the defendants to avoid liability in plaintiff's Auto accident case

6. The standard for reversing a verdict because of general judicial misconduct during trial is rather stringent.' Kennedy, 901 F.2d at 709. To sustain a claim of this kind, there must be an 'extremely high level of interference' by the trial judge which creates 'a pervasive climate of partiality and unfairness.' U.S. v. DeLuca, 692 F.2d 1277, 1282 (9th Cir.'82). See also Laurins, at 537 ('A judge's participation [in the trial] justifies a new trial because plaintiff proof with documented record shows actual bias and leaves an abiding impression that the jury were implanted to damage plaintiff and get outcome for their personal gain

7. At the same time, however, courts have recognized that a trial judge is 'more than an umpire.' U.S. v. Laurins, 857 F.2d 529, 37 (9th Cir.'88), cert. denied,

492 U.S. 906 ('89). It is perfectly appropriate for a judge to 'take part where necessary to clarify testimony and assist the jury in understanding the evidence.' U.S. v. De Sisto, 289 F.2d 833, 834 (2d Cir.'61). See also Laurins, at 537 (trial judge 'may participate in the examination of witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition'); U.S. v. Mostella, 802 F.2d 358, 361 (9th Cir.'86) (same); U.S. v. Poland, 659 F.2d 884, 93 (9th Cir.) (Finding questions calculated to make testimony clearer to jury not improper), cert. denied, 454 U.S. 1059 (1981). But in the case of plaintiff it was opposite. Judge accept and allowed tampered and altered pictures and evidence presented by the Craig Noland when plaintiff point out that these picture are tampered and altered trial judge warn plaintiff not to object about the tampered pictures.

8. The inappropriate role of judge D. Lieber that he played in plaintiff's jury trial has been the subject and cause of a number of appeals.

Courts have said a trial judge must always remain fair and impartial. But judge D. Lieber was not fair. Kennedy v. Los Angeles Police Dep't, 901 F.2d 702, 09 (9th Cir.'89). He must be ever mindful of the sensitive role [the court] plays in a jury trial and avoid even the appearance of advocacy or partiality. Which he did appeared against plaintiff ' ' Id. (quoting U.S. v. Harris, 501 F.2d 1, 10 (9th Cir.'74)).

9. The fact is the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the U.S. Constitution. Gayle v.

Scully, 779 F.2d 802, 06 (2d Cir.'85), cert. denied, 479 U.S. 838 ('86); McBee v. Grant, 763 F.2d 811, 18 (6th Cir.'85).

10. Mostella, 802 F.2d at 362 (judge's excessive bias and allowing tampered and altered picture of the scene presented by the defendant's attorney Craig Noland did amount to 'extreme overstepping of his proper judicial role'--conviction affirmed); Poland, 659 F.2d at 894 (finding trial judge's impatience with plaintiff, yelling, warning and displays of irritation.

11. Plaintiff motions was refused and never allowed to be heard by the Judge D. Lieber to that the Constitution has been violated').

12. Trial judge did not ask plaintiff if he want to be represented by new counsel.

13. Trial judge sign the order with out plaintiff new counsel.

14. Trial Judge refused to hear motion of fraud filed from plaintiff and was filed within 7 days.

15. Trial Judge always favor defendant Craig Noland even though plaintiff filed motion.

16. Judicial independence is predicated on "good faith" decision-making. It was never intended to include "bad-faith" decision-making, where a judge knowingly and deliberately disregards the facts and law of a case. This is properly the subject of disciplinary review, irrespective of whether it is correctable on appeal. And egregious error is also misconduct, since its nature and/or magnitude presuppose that a judge acted willfully, or that he is incompetent.

17. Plaintiff has assessed of judicial misconduct mechanisms during his trial and after his trial when plaintiff represent himself.

18. The most serious misconduct by judges is that which is the least likely to subject them to discipline. It is not what they do in their private lives, off the bench, but what they do on the bench in the course of litigation. The obvious image is the judge who runs his courtroom as if he owns it, who looks down from his elevated bench and treats litigants in an imperious and abusive fashion. But even where a judge is, as he is supposed to be, patient and dignified in his demeanor, every court appearance, just like every written motion, involves a judge ruling on a procedural or substantive aspect of a case. And there are judges who, while presenting a veneer of fairness, are intellectually dishonest. They make rulings and decisions which are not only a gross abuse of discretion, but which knowingly and deliberately disregard "clear and controlling law" and obliterate, distort, or fabricate the facts in the record to do so.

19. Why would a judge be intellectually dishonest? He may be motivated by undisclosed bias due to personal or political interest. Judicial selection processes are politically controlled and closed, frequently giving us judges who are better connected than they are qualified. And once on the bench, these judges reward their friends and punish their enemies. Although ethical codes require judges to disclose facts bearing upon their impartiality, they don't always do so. They sit on cases in which they have undisclosed relationships with parties, their attorneys, or have interests in the outcome, and do so deliberately because they wish to advantage either one side over another or sometimes themselves. Trial

Judge was not original assignee to the plaintiff case he came last minutes just
for the trial and did know nothing about the base of the case. He still kept
himself in the trial case when he comes to know that he was judge in plaintiff's
divorce case.

20. Judge exercises their wide discretion in favor sides of defendant. That's the side
for whom deadlines were flexible and for whom procedural standards and
evidentiary rules didn't apply.. Meanwhile, Plaintiff struggles to meet deadlines
and has its worthy motions denied. In extreme Judge design a judicial process
that make victory for defendant and defeat for plaintiff that was the standards
use in entire trial during trial was none legal principles, rules of evidence, Judge
never heard motions filed by plaintiff but made favorable decision for Craig
Noland.

21. It involves a judge's knowing and deliberate misrepresentation of the material
facts on which the case pivots. These facts determine the applicable law. If the
applicable law doesn't allow the judge to do what he wants to do. Judge changed
the material facts so that judge can apply law. Judge just rendered decisions
without reasons or factual findings.

22. Trial Judge yells on plaintiff.

23. Trial Judge ignores plaintiff motions. Did not care to hear even plaintiff valid
points.

24. Trial Judge made decision in favor of defendant when Craig Noland went
forward to close to judge table during trial and whisper with judge. That
whispering conversation was not heard by the court reporter to report it.

25. Judge rule was above the law and not correctly on the admissibility of the
    evidences. Proof can be provided.

26. The instructions to the jury were not consistent with the law covering the
    law and constitutional rights of the plaintiff.

27. Bias and prejudice did intervene to cause unfair results to plaintiff.

28. Errors were called at the judgment day by plaintiff with out his counsel
    to the judge's attention in trial proceedings. That Craig Noland has done
    fraud with plaintiff.

29. Trial Judge shouted on plaintiff you take that judgment paper now when
    plaintiff refuses to take final judgment paper on Oct. 4. 2002 presented by Craig
    Noland because it was all fraud that's why plaintiff refuse to accept it.

30. Plaintiff asks the court to rule that it is improper for defendants to represent
    other defendants.

31. Plaintiff asks the court to rule that Defendants' conduct appears to constitute
    several criminal acts and should be investigated by a prosecutor.

32. Plaintiff asks the court to rule that the conduct of the defendants constitutes
    professional misconduct and recommend that the Chief Disciplinary Counsel
    initiate an investigation.

33. Court costs should be assessed to Defendants.

34. Injunctive Relief

35. This court should issue orders sanctions sua sponte if the defendants attempt to
    undermine the Plaintiff's due process rights before this court.

36. It has injured him emotionally, causing him mental suffering, loss of sleep, depression, nervousness, grief, anxiety, worry, anger, mortification, shock, memory loss, humiliation, indignity, embarrassment, and paranoia, uncertainty, apprehension; and,

37. As well as incurring him the pain and suffering of litigation, which has required thousands of hours of his time and energy to learn the law and for research and writing to pro se

38. It has caused plaintiff to suffer and aggravate a lack of concentration that has resulted in an inability to perform his normal life That Plaintiff has suffered severe and permanent damage to his life.

39. Destroyed plaintiff faith and trust in the American judicial system, causing him to believe that lawyers and judges can break the rules with impunity and get away with it.

40. He lives in fear that he will be incarcerated for standing up for his constitutional rights

41. It is at present causing him emotional pain and suffering. That he anticipates that he will never again be able to function as a normal member of society,

42. Plaintiff suffers permanent damage from legal abuse syndrome.

43. Plaintiff have told in front of jury during trial that these picture have been tampered but trial judge instead of investigation of these picture I was given warning by the trial judge of not to mention.

44. Regarding defamations. Motion which plaintiff has never been heard on Nov.1.2002? Even though plaintiff file motion regarding defamation and frauds.

Plaintiff was given date by Hon. Judge D. Lieber during Oct, 4.2002 when plaintiff file motion objecting to the due process violation of plaintiff right of due process and violation of fair trial. And defamation, frauds.

**45.** Even though. Plaintiff have brought proof of new finding but court never even heard when I was given Date by Hon Judge D. Lieber for Nov. 1. 2002. But trial judge intentionally ignore the motion and judge did not showed up. Even though he was in the building and defendant Craig Noland was in the building too.

**46.** Defendant Mr. Craig Noland is grossly negligence for violating plaintiff's protected order, which I can prove, degrading, ethnic remarks toward plaintiff and bringing plaintiff sex life that was not related to case. I am astonished to find out regarding tampering with my photos of my car accident.

### Relief Requested

Court find defendant to brings him to justice Plaintiff should be compensated for defendant wanton act in personally for the amount of $200.000 and whatever jury feels fair compensation for relief. **Plaintiff requested claim trial by jury. See Rule 38(b) of the federal Rules of Civil procedure.**

**George S. Buth**

43  Defendant refuses to hear motion for legal help and transcript compensation (due to his disability to pay fees for transcript), which was filed on DEC. 10. 2002.

44  Defendant was bias and violates plaintiff's constitutionals right by not investigating on letter that was sent on Oct. 20. 03 by state Court Administrative office responded to filed plaintiff's complaint on Nov.12.

2002 for planting some jury members to control the outcome of the trial.see Exhibit: C. Page 1

**45** Defendant George S. Buth refused to hear plaintiff's motion filed on Dec. 4-2002. When Judge Dennis Lieber breach rule of law and due process. Commit treason by breaching oath of fairness for all. see Exhibit: C. Page 2

**Paul J. Fischer**

**46** Defendant knowingly and wanton bias with plaintiff and try to confuse the fact for discipline the judge for bias and allege.

**47** Defendant has used same tactics when answering to three complaints of plaintiff against two judges.

**48** Defendant has acted on his own risk over looking the law and plaintiff's constitutional right and bias towards plaintiff.

**49** Defendant intentionally ignores the evidence, which is in the court records as proof of misuse of power and bias.

**50** Defendant did not ask for proof.

Defendants is liable for creating confusion in the justice and giving mental anguish to plaintiff request for justifying his pain and suffering $100,000 or remove him from his very sensitive job. Plus investigation.

**Mary Kelly.** Deputy County Clerk.

**51** Plaintiff's request of retrial and firing of his attorney document are not in the administrative office. Plaintiff has proof of filing.

**52** Mary Kelly took the papers herself from plaintiff. And give him one with stamped. And charged plaintiff $20 for fee.

**53** Plaintiff is doubt full if plaintiff's attorney 9-17-2002 motion of withdrawal as counsel for the plaintiff is still in the administrative office file.

**54** Mary Kelly many times came to counter when plaintiff went to file motion she always confuse to plaintiff and yell at him. She defraud plaintiff.

**55** Docket sheet is tampered 9-17-2002 document is not enter See exhibit B, Page 1 and 2

**56** Partial transcript was allowed to be filed with altered and tampered see Exhibit B, Page 2 Docket sheet

**George L. McCarger** (P45588) and Stephen C. **Bransdorfer** (P11133)

**57** George L. McCarger (P45588) and Stephen C. Bransdorfer (P11133) as Attorneys for plaintiff has breach of trust, breach of attorney client relationship, and covering up fraudulent activity by Defendant attorney Craig Noland.

**58** George L. McCarger (P45588) and Stephen C. Bransdorfer (P11133) was fired by plaintiff prior to sep 15th 2002. Neither attorney represent plaintiff. Anything both attorneys have done on behalf of plaintiff was illegal and was not approved by the plaintiff. If they have done any correspondence with defendant attorney that will be conspiracy with plaintiff.

59  Plaintiff was not aware of if both attorneys have received any money
including wage loss or any kind settlement or award from defendant.

60  Plaintiff made objection on Oct. 4th 2002 during court hearing that
plaintiff don't want to be represented by his attorney because of his
breach of trust and hiding and covering illegal activities of Craig Noland
defendant attorney's tampering and altering with pictures and document.

### Catherine Garcia- Lindstorm

61  Defendant heard when Craig Noland offer weekend boat ride to
insurance claim adjuster in front of the elevator when plaintiff and his
attorney was waiting for the elevator.

62  Defendant always came during entire trial in police chief uniform.

63  Defendant called to stop Craig Noland when Craig Noland was taking
testimony of plaintiff's two expert witnesses. That was clearly
harassment tactics to plaintiff witnesses.

### Defendant Craig Noland

In committing the acts of which reference is made in this complaint, Defendants
have acted willfully, maliciously, wantonly, oppressively, intentionally, knowingly,
fraudulently, in bad faith, and with reckless disregard of the consequences and with
such entire want of care as raises the presumption of conscious indifference and
malice toward Plaintiffs such as to entitle Plaintiffs to punitive damages of Ten
Millions Dollars or Bar him from practice of Law for life under united state law;
further, that Defendants acted with the specific intent to cause serious harm to
Plaintiffs. Defendants' conduct was intentional and reckless and designed to cause

severe damage to Plaintiffs. Further, Defendants' conduct was extreme and outrageous as those terms are defined in united state law and without justifiable legal excuse. Plaintiffs have suffered severe emotional distress because of Defendants' actions and plaintiff has been unable to maintain mental feeling of closures of the case. Defendant Mr. Craig Noland insulting plaintiff, I am sure in justice opinion will be disgraceful and hurtful toward plaintiff. Defendant racist, unwarranted, vicious attack on plaintiff was inhuman. Defendant causes plaintiff to question the purpose of personal protected order. He is liable of all the suffering that plaintiff went through. His attacks on plaintiff were inhuman and irrelevant to the case. And acting above the law in the court encouraged and applauded by the trial judge and silently approved his purposeless and malicious actions. Hate, bigotry, and incivility did advance the cause of destroy legal right and constitutional right.

     **64** Strict Liability,

     **65** Fraud and Misrepresentation,

     **66** Conspiracy to Misrepresent, alter document and Commit fraud,

     **67** Violation of constitutional right, violation of due process

     **68** Intentional Infliction of emotional Distress,

     **69** Extortion,

     **70** Slander per Se.

     **71** Defamation

     **72** Libelous

     **73** Violation of MRC. 9.104(3) (4)

74  Filling of claim with insurance under professional insurance code instead of Auto accident insurance claim code with police car of Oct. 31. 1999.

75  Getting thousand of dollar of checks from insurance company that were issues on plaintiff name and never inform plaintiff. Where are those checks? Why plaintiff was not informed?

**Defendant great American Insurance**.

76  Refuse to accept claim form professional malpractice claim.

77  And refuse to give me information about his type of insurance.

78  And refuse to give me information about what kind of professional insurance coverage he carries. And what is cover.

79  Midwest claim Services Representative was offered Boat Ride on weaken getaway by defendant attorney Craig Noland in front of the elevator when plaintiff himself and plaintiff's attorney and police chief Catherine Garcia was standing.

### Relief Requested

Great American insurance is liable for $100,000 with interest and other courts cost might come to plaintiff.Great American is liable for not cooperating with Plaintiff. Plus other fees or expenditure might occur. Jury trial demanded.

**Shawn M. Breimayer, CSR (6888)**

80  Defendant was on day off dated: Oct. 4. 2002

81  Defendant Shawn was on day off but specially brought to report the final judgment order.

**82** Even though original time of case was 8:30 o'clock on Oct. 4. 2002 but
Shawn court reporter could not come early so case hearing has to be
delayed until Shawn came and hearing commenced at 9.53 am. Even
though the scheduled reporter was on duty at 8:30 am on Oct. 4. 2002.

**83** Why Shawn reporter was brought to report?

**84** Special early time was arranged just only for this case usually trial judge
hear cases after noon.

**85** Judgment was arrange very secret time for the final judgment so no
other person can be present in the court it was very fearful scene for
plaintiff.

### Punitive damages

Defendants' conduct as described above is willful, intentional and malicious resulting
from fraud, insult and malice and is associated with aggravating circumstances, such as
willfulness, wantonness, malice, oppression, outrageous conduct, indignity, insult,
fraud, and criminal conduct, thus warranting plaintiff's recovery of punitive damages, to
be determined by the trier of fact. Plus litigation fees can be taken into consideration
when estimating the foregoing punitive damages that are more than $ 75000. Whatever
jury feels fair to compensate plaintiff.

### Jury Demand

Plaintiff hereby demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of
Civil Procedure.

**Ad Dannum Clause**

Michigan State is responsible for their employees for their unwanted actions against plaintiff and plaintiff make responsible to Michigan State for relief and demand jury trial.

Based upon the foregoing pleaded facts, plaintiff prays for compensatory and punitive damages in the amount of Ten Million Dollars ($10,000,000.00) from Michigan State Dept for depriving plaintiff from his civil right, due process and deprive him from constitutional right. And give him mental torture.

Or, in the alternative, that this court fine that Craig Noland should be disbarred from practice and Craig Noland and his firm be investigated to determine if their participation in representing in similar cases requires discipline, and compensatory and punitive damages in the amount of five hundred thousand ($500,000).

### First Relief request from Michigan State

WHEREFORE, plaintiff prays that this Court:

> A. Order defendants to disclose the requested records in their entireties and make copies available to plaintiff.
>
> B. Provide for expeditious proceedings in this action;
>
> C. Award plaintiff its costs and reasonable interest incurred in this action; and
>
> D. Grant such other relief as the Court may deem just and proper.
>
> E. Demand jury trial.

### Second Relief request

WHEREFORE, plaintiff prays that this Court find and bring Craig Noland.

A. Order defendant Craig Noland to disclose the requested

records in their entireties and make copies available to plaintiff.

B. Provide for expeditious proceedings in this action;

C. Award plaintiff its costs and reasonable interest incurred in
this action; and

D. Grant such other relief as the Court may deem just and proper.

E. Demand jury trial.

F. Order and Find Craig Noland and order him to provide

plaintiff under oath who are the other parties were with him in

planting the jury member and altering the photo and loading the

original picture of the accident on the CD. Plaintiff request relief

from Craig Noland for the amount of $5000000 with interest or

whatever Jury feel fair for his actions and damages to plaintiff.

And bar him from practice.

Very Respectfully Submitted                    DT: 11-21-05

Rashid Jahm
49 Hallenan Ave
Lawrence, MA.01841
(978) 258-9419



**EXHIBIT**

3

Def. McCarya    838

**URE ACT**

**LIMITATION OF ACTIONS**

m furnished,
1, 110 Mich.

maker prom-
id, contained
a holder, and
were to be
partial pay-
not "demand
notes" and
egan to run
, and hence
presented by
d within six
is instituted,
w (1942) 3

t on install-
ed debtor of
clause con-
nt, at which
agreements
lender's ac-
I within six
ed. Sparta
.W.2d 817.

nent falls

. William
49 Mich.

anse of ac-
n, § 18.13.

### Notes of Decisions

Construction and application  1

1. **Construction and application**

For alimony payments and child support payments, period of limitation begins to run against

each installment when it becomes due. Ewing v. Bolden (1992) 486 N.W.2d 96, 194 Mich.App. 95.

## 600.5838.  Malpractice claim; exception for medical malpractice; accrual; limitations

Sec. 5838.  (1) Except as otherwise provided in section 5838a,[1] a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

(2) Except as otherwise provided in section 5838a, an action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in sections 5805[2] or 5851 to 5856,[3] or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later.  The burden of proving that the plaintiff neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim shall be on the plaintiff.  A malpractice action which is not commenced within the time prescribed by this subsection is barred.

Amended by P.A.1986, No. 178, § 1, Eff. Oct. 1.

[1] Section 600.5838a.

[2] Section 600.5805.

[3] Sections 600.5851 to 600.5856.

### Historical and Statutory Notes

**Source:**

P.A.1961, No. 236, § 5838, Eff. Jan. 1, 1963.
C.L.1948, § 600.5838.
C.L.1970, § 600.5838.
P.A.1975, No. 142, § 1, Imd. Eff. July 9.

As originally enacted, this section read:

"A claim based on the malpractice of a person who is, or holds himself out to be, a member of a state licensed profession accrues at the time that person discontinues treating or otherwise serving the plaintiff in a professional or pseudo-professional capacity as to the matters out of which the claim for malpractice arose."

The 1975 amendment inserted the subsection numbering; in subsec. (1) inserted professions related to health following "of a state licensed profession" and added "regardless of the time the plaintiff discovers or otherwise has knowledge of the claim" at the end; and added subsec. (2).

The 1986 amendment inserted "Except as otherwise provided in section 5838a," in subsecs. (1) and (2); in subsec. (1), inserted "or herself", deleted a listing of professions related to health following "of a state licensed profession" and deleted "treating or otherwise" preceding "serving"; and in the second sentence of subsec. (2), deleted ", as a result of physical discomfort, appearance, condition or otherwise," preceding "neither discovered".

P.A.1986, No. 178, § 3, provides in part:

"(1) Sections 2925b, 5805, 5838, and 5851 of Act No. 236 of the Public Acts of 1961, as amended by this amendatory act, shall not apply to causes of action arising before October 1, 1986."

For effective date provisions of P.A.1986, No. 178, see the Historical Note following § 600.1483.

**RE ACT**

(2) The period of limitations is 2 years for an action charging assault, battery, or false imprisonment.

(3) The period of limitations is 5 years for an action charging assault or battery brought by a person who has been assaulted or battered by his or her spouse or former spouse, an individual with whom he or she has had a child in common, or a person with whom he or she resides or formerly resided. This limitation applies to causes of action arising on or after the date of enactment of the amendatory act that added this subsection and to causes of action in which the period of limitations described in subsection (2) has not already expired as of the date of enactment of the amendatory act that added this subsection.

(4) The period of limitations is 2 years for an action charging malicious prosecution.

(5) Except as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice.

(6) The period of limitations is 2 years for an action against a sheriff charging misconduct or neglect of office by the sheriff or the sheriff's deputies.

(7) The period of limitations is 2 years after the expiration of the year for which a constable was elected for actions based on the constable's negligence or misconduct as constable.

(8) The period of limitations is 1 year for an action charging libel or slander.

(9) The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.

(10) The period of limitations is 5 years for an action to recover damages for injury to a person or property brought by a person who has been assaulted or battered by his or her spouse or former spouse, an individual with whom he or she has had a child in common, or a person with whom he or she resides or formerly resided. This limitation applies to causes of action arising on or after the date of enactment of the amendatory act that added this subsection and to causes of action in which the period of limitations described in subsection (9) has not already expired as of the date of enactment of the amendatory act that added this subsection.

(11) The period of limitations is 3 years for a products liability action. However, in the case of a product that has been in use for not less than 10 years, the plaintiff, in proving a prima facie case, shall be required to do so without benefit of any presumption.

(12) The period of limitations for an action against a state licensed architect, professional engineer, land surveyor, or contractor based on an improvement to real property shall be as provided in section 5839.

Amended by P.A.1986, No. 178, § 1, Eff. Oct. 1; P.A.1988, No. 115, § 1, Imd. Eff. May 2; P.A.2000, No. 2, Imd. Eff. Feb. 17, 2000; P.A.2000, No. 3, Imd. Eff. Feb. 17, 2000.

347

### Notes of Decisions

Effect of payment on limitation period  2
Scope of barred claim  3
Time period  1

#### 1. Time period

Under statute of limitations for foreclosure of mortgage, this section, and discharge of mortgage statute, § 600.3175, both containing language in alternative, greatest period of time to run is proper one to apply, i.e., correct time to commence its run is from due date provided in mortgage, and not date of last payment. Degen v. Degen's Estate (1978) 264 N.W.2d 64, 80 Mich.App. 573.

A suit to cancel discharge of mortgage and to foreclose mortgage as reinstated was a suit for foreclosure of a mortgage and was not barred by limitations, where suit was instituted within 15 years after mortgage became due on December 1, 1936. Plasger v. Leonard (1946) 25 N.W.2d 156, 316 Mich. 174.

In a suit to enforce a lien on land for the payment of an annuity, the rule as to limitations applicable to the foreclosing of mortgage liens should be applied and recovery allowed for payments not 15 years past due at the commencing of the suit. Stringer v. Gamble (1909) 118 N.W. 979, 155 Mich. 295.

#### 2. Effect of payment on limitation period

Where wife was a joint obligor with her husband on a purchase-money mortgage given by them to his parents with respect to purchase of real property and did not know of or give consent to payment made by husband to his mother on mortgage, that payment did not stop running of statute of limitations with respect to right of mother to foreclose mortgage against wife, and that right was lost on passage of a period of 15 years. Campbell v. Campbell (1980) 301 N.W.2d 896, 102 Mich.App. 462.

Where mortgagors' grantee assumed and agreed to pay mortgage indebtedness, mortgagors were bound by grantee's payments and limitations period ran from date of grantee's last payment. Guardian Depositors' Corp. of Detroit v. Wagner (1938) 283 N.W. 29, 287 Mich. 202.

Foreclosure of farm mortgage upon which no payments had been made for 26 years other than payment within 15 years which mortgagor

remitted to apply on account and claimed was rent, though mortgagee's attorney upon instruction from husband of mortgagee's daughter issued receipt as for payment on mortgage, to which mortgagor subsequently objected, was barred by statutory 15 year limitation, since evidence of new promise to pay indebtedness in removal of bar was not clear and decisive or such as to constitute acknowledgment of liability and willingness to pay. McDuffee v. Barker (1937) 273 N.W. 744, 280 Mich. 394.

An indorsement on a mortgage note of a certain sum as part payment without the mortgagor paying anything, or there being any other consideration therefor, was insufficient to constitute a payment, within C.L.1897, § 9725, which provided that a suit to foreclose be commenced within 15 years, from and after the time the mortgage was due, or 15 years after the last payment was made on the same. Rogers v. Robson (1907) 111 N.W. 193, 147 Mich. 656.

Payment by one of two joint mortgagors or by the principal mortgagor was sufficient to toll C.L.1897, § 9725. Brown v. Hayes (1906) 109 N.W. 845, 146 Mich. 474.

If the second mortgage was intended by the parties as payment of the interest due on the first, it was sufficient to toll the statute as to the first mortgage debt. Blair v. Harris (1889) 42 N.W. 790, 75 Mich. 167.

Where, on a mortgage dated in 1855, payments were indorsed on the note as late as 1866, by the agent of the person entitled to pay the mortgage, a foreclosure was not barred in 1878. Butler v. Hogadone (1881) 8 N.W. 93, 45 Mich. 390.

#### 3. Scope of barred claim

That remedy at law upon a note which accompanied mortgage was barred by limitations did not affect validity of mortgage or remedy upon it, which remedy may be enforced, although action on debt secured or evidence thereof is barred. Guardian Depositors' Corp. of Detroit v. Wagner (1938) 283 N.W. 29, 287 Mich. 202.

In an action to foreclose a mortgage not yet barred by the statute of limitations, though the note secured was, no personal decree could be rendered against defendant. Baent v. Kennicutt (1885) 23 N.W. 808, 57 Mich. 268.

### 600.5805. Injuries to persons or property

Sec. 5805. (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.