# UNITED STATES DISTRIC COURT

District of Massachusetts
1 courthouse way, suite 2300
Boston, Massachusetts. 02210
617-748-9152

Rashid Jahm                                    Case No:05CV11638-JLT
       Pro se                                  **Jury Trial Demanded**
    Plaintiff

Vs

Lynch & Lynch
Stephen J. Duggan Attorney for **Defendant Craig Noland**
45 Bristol drive South Easton, MA 02375
Tel: (508) 230-2500
        Defendant-Appellees.

### Plaintiff answer to defendant Craig Noland's motion of personal Jurisdiction

This Court has jurisdiction over this matter because plaintiff evidence and proof are undisputable against defendant Craig Noland. Personal Jurisdiction is not applicable on conspiracy against and violation of plaintiff constitutional right.

### Federal Question Jurisdiction

Congress has conferred upon federal courts jurisdiction to decide federal questions i.e., cases or controversies arising under the Constitution and laws of the United States (28 U.S.C. § 1331) and cases or controversies between citizens of different states (diversity jurisdiction). (28 U.S.C. § 1332.) The existence of subject matter jurisdiction generally must be demonstrated at the outset by the party seeking to invoke it. (See FRCP 8) It cannot be conferred by consent of the parties, nor can its absence be waived. (Friedenthal § 2.2) The rule that a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action so demonstrates is called the "well pleaded complaint rule."

1: This is a federal civil rights action pursuant to 42 U.S.C. § 1983 and § 1988, and the federal constitutional provisions and statutes referred to herein, by all the

above names mentions, as defendants are Michigan State employees and Others including defendant attorney Craig Noland (P30717), and including insurance companies together has conspire against plaintiff.

2. Plaintiff seeks compensation from Defendants in the form of special, general, consequential, and punitive damages – except as prohibited by law – including the other fees and costs reasonably incurred in the prosecution of this action.

3. The damages Plaintiff seeks from Defendants are the proximate, direct and consequential result of Defendants' willful, and/or malicious, and/or intentional, and/or reckless and/or deliberately indifferent actions and/or omissions, individually or in concert with others, which violated Plaintiffs' federal constitutional and statutory rights including – but not limited to – their conduct in:

4: Unlawfully depriving, and conspiring to deprive, Plaintiff of his well established federal constitutional and statutory rights and his rights to enjoy the due process and equal protection of law and the equal application of the law. Now comes plaintiff who has been victimize by Michigan state judicial and plaintiff has exhaust his state level last hope when Michigan Supreme Court has fail to protect his constitutional right. Plaintiff's complaint contains several claims, all of which remain at issue. All defendants deprived plaintiff from his constitutional right. Plaintiff seeks constitutional and This Court has jurisdiction over all defendants to stop them not to deprive plaintiff from constructional right. The first is a claim under 42 U.S.C. Section 1983 in which plaintiff alleges that all conspiring parties, acting under color of state law, deprived plaintiff of his

constitutional right under equal protection of the laws under the Fourteenth amendment.

The second is a claim under 42 U.S.C. Section 1985(3) in which plaintiff alleges that all parties conspired to deprive plaintiff of his rights to due process, equal protection of the laws and of equal privileges and immunities under the laws. The third is a state law claim in which plaintiff asserts a claim of intentional infliction of emotional distress based primarily on the alleged incident of plaintiff's Oct. 31.1999 car accident.

Plaintiff is requesting justice, due process and fair trial from this honorable court under a fair jury. Plaintiff, as and for his complaint, alleges the following upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters. Plaintiff's information and belief is based upon documented evidence.

WHEREFORE Plaintiff request discovery so plaintiff can provide more evidence. Request to this Honorable Court for jury trial.

Dated: February 06, 2006

Rashid Jahm
Pro se

49 Hallenan Ave
Lawrence, MA.01841
978-258-9419

Certificate of service
I hereby certify that a true copy of the Forgoing document was served on all known parties herein by causing a copy of the same to be mailed , postage prepaid on 2-6-06

UNITED STATES DISTRIC COURT

District of Massachusetts

1 courthouse way, suite 2300

Boston, Massachusetts. 02210

617-748-9152

Rashid Jahm                                         Case No:05CV11638-JLT

        Pro se                              **Jury Trial Demanded**

    Plaintiff

Vs

Lynch & Lynch

Stephen J. Duggan Attorney for **Defendant Craig Noland**

45 Bristol drive South Easton, MA 02375

Tel: (508) 230-2500

        Defendant-Appellees.

### **Plaintiff Answer, Challenge and proof that Affidavit is not all true by Craig Noland**

Plaintiff's answer to No. I

Plaintiff has all proof with evidence on **EXHIBIT (A) (B)** but Defendant did

provide proof.

Plaintiff answer to No.2

This is federal Court and this court has jurisdiction on cases like defendant has

conspire to violate plaintiff constitutional right and due process. Craig Noland is

liable **under 28 U.S.C. § 1331 and 28 U.S.C. § 1332.**

Plaintiff answers to No. 3 to 10 are Irrelevant

Plaintiff answer to No. 11 and 12 agree

Plaintiff answer to No. 13 to 31 where all fraud, conspiracy, violation of due

process, violation of constitutional right, defamation, slander per se, libelous,

breach of duty of care

Plaintiff answer to No. 18 is lie it was first withdrawal of plaintiff counsel first.

See proof **EXHIBIT (A) Page 1, 2, 3**. Plaintiff start representing himself as pro

When plaintiff find out that he being defraud.

Plaintiffs answer to No19 no true.

Plaintiff answer to No. 20 case evaluation has no date so it is not valid.

Plaintiff answer to all defendant Craig Noland no cause of action which is Conspire statement See plaintiff Medical proof of his injuries on

## EXHIBIT (C)

Plaintiff's proof of accident's pictures of the scene which are alter and tampered By Craig Noland See **EXHIBIT (D)**

Plaintiff's answer to defendant No. 31. Plaintiff did try but when plaintiff finds out that the system controllers are fooling him and he cannot get nowhere. His Constitutional right has been violated and exhausts his state level. That's why plaintiff Seek federal court.

Plaintiff is on social security see **EXHIBIT** (E) but defendant Craig Noland own Four-law firm he create the situation and Craig Noland Financially in very good position to defendant in federal court.

Plaintiff's Apartment building where plaintiff was renting whole apartment complex got notice of condemnation from the city of Wyoming. See **EXHIBIT** ( E ) page 3.

Plaintiff was acting as pro se see **EXHIBIT** ( A ) Page 1, 2, 3 but still Craig Noland right letter to plaintiff Attorney see **EXHIBIT** ( E ) page 4 when plaintiff call Midwest claim adjuster to remind him of offer of Craig Noland Boat ride.

Plaintiff insert memorandum, Alter transcript of Oct. 4 2002 if any one can make sense out of it. See **EXHIBIT (F)** Page 2 B, 3B

Court is rule by the Law not by the people. But in plaintiff case justice was rule by the people not by the Law. I still believe Justice will be served. Because I confident and believe on the system. And it works.

A letter of Complaint against Craig Noland was sent to attorney grievance commission. See **EXHIBIT (F)** Page 4, 5

A letter From Craig Noland To Charles Vandyken sending him $100 For making few Copies of the record and telling him if exceed Contact him prior to making. See **EXHIBIT** (F) Page 7

Invoice of Gary McDonald of $1424.50 Craig Noland meeting with him and He charged $450. See EXHIBIT (F) page 6

Police Car invoice of repair due to accident $1004 see EXHIBIT ( F ) Page 2, 3

WHEREFORE plaintiff Request to honorable Court for discovery and jury

trial.

Dated: February 06, 2006                    Rashid Jahan
                                            Pro se

                                            49 Hallenan Ave.
                                            Lawrence, MA.01841
                                            978-258-9419

Certificate of service
I hereby certify that a true copy of the Forgoing document
was served on all known parties herein by causing  a copy
of the same to be mailed , postage prepaid on 2-6-06

        Document mailed by us postal to all
        Patrick Dolan
        John A. Christopher
        Stephen J. Duggan
        Juliana deHaan rice
        George L. McCarger
        Mark E. Donnelly (P39281) Pro Hac Vice

SEP -
2002

RASHID A JAHM
        Plaintiff
    V
City of walker, a Michigan Municipal
Corporation, and EUGENE E KARS,
        Defendants.

File NO. 00-08794-NI
HON, DENNIS B. LIEBER

Craig R. Noland (p30717)
SMITH< HAUGHEY< RICE&ROEGGE
Attorneys for Defendants
200 Calder plaza Bldg.
250 Monroe N .W.
Grand Rapids ,Mi 49503-2251
616 774-8000

Rashid Jahm
3009 Eastern SE APT 303E
Grand Rapids,49508.
(616) 559-6185

September 18, 2002

Request For retrial

Dear Hon and Respected Judge

                            I beg to request your Honorable judge to
retrial or giving me the right to appeal of the case because of violation of my
civil right and violation in standard of code of ethic by Mr. Craig Noland during
his close argument and all along the trial. He even write word NO with red ink on
a huge board to show and guide the jury through advising them to say what he
like them to say and handing over picture to jury during cross examination and
instructing jury on his opening argument telling them to write zero when you
received the form of Virdic to write zero that was clearly educating to jury what
he want them to do rather let them find the fact and their was not no objection
by my attorney and not even he discuss about instruction of juries.

1    I hold that the police owe a duty to innocent passangers like me who are
going to work and get hurt by police and police owe duty to civilian for their
safety . Statutes governing operation of the emergency vehicles MCL 257
603(3)(c) Authorizes emergency vehicles to exceed prima facie speed limits,
MSA 9 2332 exempts police officers from speed limits but does not exempt the
police from the consequences of a reckless disregard of safety of others . MCL
257 653 . MSA 9 2353, Specifically States that the statutes dose not relieve of the
driver of an authorized emergency vehicle from the duty to drive with due
regard for the safety of persons using the highway. the statutory references
endangering life and the safety of others demonstrate that the legislature has
placed a duty upon police officer toward innocent persons.

[MCL 691.1405; MSA 3.996(105).] government agencies are liable for bodily injury and property damage resulting from the negligent operation by police officer, of a moter vehicle of which the govemmental agency is owner.
That make clearly Gross negligence when Police officer E Karr testified in the witness stand that he did not apply the break and he answer that he do not know why he did not apply the break . That is question of investigation if he was in perfect and normal condition to be on job for safety of the public.

As Hon Judge Johnston write in his word That question is if officer did care when he interring the intersection but Officer Karr his own witness stand he admit he did not apply the break so that is clearly and proven gross negligence.
I request to the Hon judge to order a new trial or granting me appeal . I beg you your Hon this is matter of life of the plaintiff .

Tennessee Supreme Court in Haynes v Hamilton Co, 883 SW2d 606, 610 (Tenn, 1994), quoting Boyer v State, 323 MDA 558, 574; 594 A2d 121 (1991):

Negligent operation of a car is not limited to the negligent manipulation of the gas pedal, steering wheel, or brake pedal, such as involved in speeding, failure to pay attention to what may be in front of the vehicle, failure to apply the brakes, etc. A decision to operate or continue operating the car, when a reasonable person would not do so, clearly can be "negligent operation." For example, if one decides to operate or to continue operating a motor vehicle when he is dizzy or otherwise ill, he may be guilty of negligent operation

2  I press Charges Against Mr. Craig Noland For Defaming ( defamation) during whole trial All I was doing is crying and no one even my attorney did not make objection every thing what he said in the whole case was not relevant to the case .
3  Mr. Craig Noland has been exploiting me in front of jury making racial slur and mentioning of 911 and mentioning of pakistan which was nothing to do with my injury and the accident that was irrelevant to case that was clearly slander and Libel and slander per se.
4  Tampering with my photo of the scene and cropping the picture the way he wanted them to look. I have been telling my attorney all along but he even did not ask me question in the trial which I wanted to explain the jury about the tampers pictures.
5  Bring the police chief in the uniform to harass my witness.
6  He has been humiliating me in the court that I am suing because I lost the business because I am poor and I am depress because I went to Pakistan I am suing because of my bad character .I trust on everybody and but he insult me and intentionally harm me .
7  I believe He has violated my civil right .
8  He has been accusing me all the time during the trial and fabricated the whole the whole situation
9  Misleading the jury and convencing them that I just paid $150 to file the claim and tampering with photo. Not providing fully material to Mr. Mcdonald and trying to get from him what Mr. Craig wants. changing the

      facts. I have been crying no one stop him that Mr. Noland what ever you
      saying that is not relevant to case .

10 Using my canceled medical authorization and offering them extra money
      if they accept the canceled authorization. Getting the information from
      Mr. george assistant of Mr. steve. Destroying and breaching the faith of
      client attorney relationship

11   Your Hon I request to the highest court to investigate criminal investigate
      in the whole situation it has been conspiracy I beg to Hon judge to look in
      to this

12 This accident is the proximate cause of my disability . I have been
      approved by Medical expert of disability Department  that is clearly show
      that my injury is cause by this accident of 31, oct. 1999 .

13  Mr. Craig noland has been failed to prove if Mr. Karr do use care when
      he was passing the intersection which he himself admit he did not use the
      break that is enough to say that he is gross negligence.

14   Your honor I request you for your kind justice    Thank you and God Bless

                        Yours obedient
                        Rashid Aahm

IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

RASHID A. JAHM,

Plaintiff,                          FILE NO. 00-08794-NI

v.                                  HON. DENNIS B. LEIBER

CITY OF WALKER, a Michigan Municipal
Corporation and EUGENE E. KARS.

Defendants.

_____/

## RESPONSE TO PROPOSED
## JUDGMENT FOR DEFENDANTS

**NOW COMES** Bransdorfer & Russell, LLP, and in response to the proposed Judgment

forwarded to this office in accordance with MCR 2.602(B)(3), states as follows:

1.     The undersigned firm has served as counsel for Plaintiff, Rashid A. Jahm, during

trial of the above cause.

2.     A Motion for Withdrawal by this firm as counsel for Plaintiff has been filed by the

undersigned firm in accordance with Rule of Professional Conduct 1.16(b)(3) and (b)(5). It is

noticed for hearing on Friday, October 4, 2002 at 8:30 a.m.

3.     Accordingly, in the exercise of the Court's discretionary powers as trial judge in

this matter, Plaintiff or substitute counsel should be provided the opportunity to respond to the

proposed Judgment.

Respectfully Submitted,

Dated: September 17, 2002          BRANSDORFER & RUSSELL, LLP

Stephen C. Bransdorfer

Stephen C. Bransdorfer (P11133)
Suite 411-S, Waters Building
161 Ottawa Avenue, NW
Grand Rapids, MI 49503-2898
(616) 774-8422

State of Michigan

The circuit court for county of Kent

Rashid A. Jahm.

Plaintiff

file No 00-08794-NI

Ho- Dennis B. Lieber

city of walker, a Michigan Municipal
corporation and Eugene E. Kars

Rashid Jahm.
3009 Eastern SE Apt 303E
Grand Rapids, Mi 49508
616-559-6185    Request for Rehire
Dear Hon judge.    firing of Attorney

Craig Noland, Roenge
smith, Haughey, Rice,
Attorney for deffendents
200 calder Plaza Bldg
250 Monroe N. w
Grand Rapis, Mi 49503
616-974-8000

http://www.jordans.com/images/products/KB0-03050-0_lg.jpg                    11/20/2005

~~~due to the trust and client Attorney relation
ship. which was not properly informed me when. lot of paper and
document was changing hand between Attorney. I was not consult
and my Attorney did not ask me what I want To Explain about
The Picture was Tamper. I was not give No chance.
and All I was doing is Crying and not able To say anything
That why I fire my Attorney. he will be not handling my
Care anymore from - 2-14-02 -
Dear Sir
            I request To Honorable court To retrial
of the case because of violation of civil Right and

poor. because of my character. That is clearly racial issues and I believe he has violated my civil right, intentional harm. Humaliation, Libel, Slander, per se. Accusation fabrication, Misleading Jury, Tampering with photos change the fact. I was crying No body stop him Not even Hon Judge. I are need Justice, I need Justice.

I request To The highest courts To investigate in The whole situation.

I has been conspiracy. I beg To The Hon Judge To Look in to this.

Dear Sir
As you know deffendent admit he did not put The breaks. and he answer he do not know why he did not put The Breaks. dear Sir That clearly is Gross Negligence of The defendent. and I asks to court to give me permission so I can give this information to Media so community be Aware of That.

Rashid John

9-14-07

$( \, 4 \, )$

4.    Accordingly, defendants proceeded to file a Notice of Entry of Judgment pursuant to MCR 2.602(B)(3).

5.    Plaintiff did not object to the form of the proposed Judgment, but instead, plaintiff's counsel has filed a Motion to Withdraw as Counsel.

6.    Regardless of whether or not the Court approved "Plaintiff's Motion for Withdrawal as Counsel," the attached Judgment for Defendants should be entered.

WHEREFORE, defendants request that the Court enter the attached Judgment for Defendants.

DATED: September 19, 2002              SMITH HAUGHEY RICE & ROEGGE

By: _____
      Craig R. Noland (P30717)
      Attorneys for Defendants
BUSINESS ADDRESS:
      200 Calder Plaza Building
      Grand Rapids, MI   49503
      (616) 774-8000

SMITH. HAUGHEY, RICE & ROEGGE, A Professional Corporation

2

$5^{-}$

## I. INTRODUCTION

Plaintiff filed a document entitled "Response of Plaintiff Motion Opposing Defendants Proposed Judgment" dated September 22, 2002. Plaintiff also filed a "Notice of Hearing" for Friday

Defendants file this Brief in response and opposition to plaintiff's Motion.

Plaintiff filed a Claim of Appeal on October 23, 2002. Thus, this Court lacks jurisdiction to set aside or amend the Judgment in Favor of Defendants entered on October 4, 2002. MCR 7.208.

The balance of this Brief is presented to the extent this Court finds that plaintiff's present Motion falls outside the limitations set forth in MCR 7.208(A).[1]

## II. LIST OF ATTACHMENTS

The following documents are attached to this Brief:

1.    Plaintiff's Claim of Appeal dated October 23, 2002.

2.    Trial testimony of Dennis Michael Payne (cross-examination).

3.    Trial testimony of Eugene Kars.

4.    Trial testimony of Dr. Fox.

5.    Excerpt from plaintiff's Trial Exhibit 23.

---

[1] RULE 7.208 AUTHORITY OF COURT OR TRIBUNAL APPEALED FROM

(A) Limitations. After a claim of appeal is filed or leave to appeal is granted, the trial court or tribunal may not set aside or amend the judgment or order appealed from except by order of the Court of Appeals, by stipulation of the parties, or as otherwise provided by law....

2

6

## STATE OF MICHIGAN

## THE CIRCUIT COURT FOR THE COUNTY OF KENT

RASHID A. JAHM,

        Plaintiff,

v

CITY OF WALKER, a Michigan Municipal
Corporation, and EUGENE E. KARS,

        Defendants.

File No. 00-08794-NI

HON. DENNIS B. LEIBER

---

Stephen C. Bransdorfer (P11133)
David C. Bransdorfer (P49814)
George L. McCargar, III (P45588)
BRANSDORFER & BRANSDORFER, P.C.
Attorneys for Plaintiff
161 Ottawa Ave., N.W. - Ste 411-S
Grand Rapids, MI  49503-2898
(616) 774-8422

Craig R. Noland (P30717)
SMITH, HAUGHEY, RICE & ROEGGE
Attorneys for Defendants
200 Calder Plaza Bldg.
250 Monroe N.W.
Grand Rapids, MI  49503-2251
(616) 774-8000

---

### NOTICE OF ENTRY OF JUDGMENT

      PLEASE TAKE NOTICE that the attached Judgment is being submitted pursuant to MCR

2.602(B)(3) and, if no written objections are filed thereto with the Clerk of the Court within

seven (7) days of the filing of said proposed Order, same shall be submitted to Judge Lieber

for entry with the court record.

DATED:  September  16 , 2002

SMITH, HAUGHEY, RICE & ROEGGE

By:   _____
       Craig R. Noland (P30717)
       Attorney for Defendants
   BUSINESS ADDRESS:
       200 Calder Plaza Building
       Grand Rapids, MI 49503
       (616) 774-8000

SMITH HAUGHEY RICE & ROEGGE

# SMITH HAUGHEY RICE & ROEGGE
A Professional Corporation
ATTORNEYS AT LAW

**200 Calder Plaza Building**
**250 Monroe Avenue, N.W.**
**Grand Rapids, Michigan 49503-2251**
**Telephone 616-774-8000**
Fax 616-774-2461

1400 Abbott Road, Ste. 410
East Lansing, Michigan 48823-1902

202 E. State Street, Ste. 100
Traverse City, Michigan 49684

320 N. Main Street, Ste. 101
Ann Arbor, Michigan 48104-1127

http://www.shrr.com

L. Roland Roegge
Thomas F. Blackwell
P. Laurence Mulvihill [7]
Thomas R. Tasker [7]
Lance R. Mather [2]
Charles F. Behler
Gary A. Rowe
Edward R. Stein
William W. Jack, Jr.
William J. Hondorp
Thomas M. Weibel
James G. Black
E. Thomas McCarthy, Jr.
Glenn W. House, Jr.
Craig R. Noland
Paul M. Oleniczak [3]
Craig S. Neckers
George F. Bearup
John C. O'Loughlin
Anthony J. Quarto

John M. Kruis
Paul Van Oostenburg
Mark P. Bickel
William R. Jewell
Jon D. Vander Ploeg
Patrick F. Geary [4]
R. Jay Hardin
Terence J. Ackert
Brian J. Kilbane
Charles B. Judson [3]
Robert C. Stone [7]
Robert W. Tubbs
Douglas G. Powe
Richard C. Kraus
Albert J. Engel, III [1]
Phillip K. Mowers
Carol D. Carlson
Marilyn S. Nickell Tyree
Christopher R. Genther
Beth S. Kromer [4]

Robert V. V. Rice
1899-1982

Robert M. Kruse
Jeffrey R. Wonacott
Aileen M. Leipprandt
David J. DeGraw
Robert W. Parker
Paul T. Jarboe
Jeffrey E. Gwillim
Randall L. Velzen
John R. Oostema
Matthew L. Meyer
Martha P. Forman
Todd W. Millar
Veronica A. Marsich
Karl W. Butterer, Jr.
Garrett J. TenHave-Chapman
Peter J. Boyles [1]
Thomas R. TerMaat
Jane C. Hofmeyer
William A. Sikkel, IV
Rachel Brochert Roe

Laurence D. Smith
1913-1980

Jo Beth Earl [1,5]
Angela T. Ross
Eric W. Phelps
Kevin M. Lesperance [?]
Heather R. Blanton
Timothy D. VandenBo...
Jeffrey J. Noorman
William L. Henn
Kirk W. Morgan
Mark A. Gilchrist
Brian A. Molde

Also licensed in:
1 Colorado
2 District of Columbia
3 Florida
4 Illinois
5 Indiana
6 Pennsylvania
7 Wisconsin
8 Georgia

Michael S. Barnes
1944-1989

A. B. Smith, Jr.
David O. Haughey
Lawrence P. Mulligan
Albert T. Quick
Brenda Jones Quick
Of Counsel

September 16, 2002

**Writer's Direct Dial Number**
**(616) 458-9466**

Circuit Court Clerk
Kent County Circuit
180 Ottawa N.W.
Grand Rapids, MI 49503



RECEIVED
SEP 16 2002
BRANSDORFER & RUSSELL

Re:    Jahm v City of Walker, et al
       Case No. 00-08794-NI
       Our File No. 70483

Dear Clerk:

Pursuant to MCR 2.602(B)(3), enclosed please find our proposed Judgment which is to be signed by Judge Lieber if none of the parties hereto file written objections with your office within seven (7) days of the date of this correspondence.

We also enclose herein a notice to all parties that the Order will be signed and entered into the record unless objected to in accordance with the above-mentioned court rule.

After same has been entered, kindly render the enclosed copies true and forward them to us in the return envelope for distribution to counsel.

Very truly yours,

SMITH HAUGHEY RICE & ROEGGE

Craig R. Noland

CRN:slo
cc w/encls:  George L. McCargar, III
             Hon. Dennis B. Lieber

BRANSD...



SEP 2 2002

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

### RASHID A. JAHM,

Plaintiff,

FILE NO. 00-08794-NI

V.

HON. DENNIS B. LIEBER

CITY OF WALKER, A Michigan Municipal
Corporation and EUGENE E. KARS.

Defendants.

RASHID A. JAHM
3009 EASTERN SE APT 303E
GRAND RAPIDS MI, 49508
(616) 559-6185

SMITH HAUGHEY, RICE & ROEGGE
Craig R. Noland (P30717)
Attorneys for Defendants
200 Calder Plaza Building
250 Monroe, NW
Grand Rapids, MI 49503-2251
(616) 774-8000

### NOTICE OF HEARING

Please take notice that Plaintiff's Motion and Objection opposing defendants' proposed judgment shall be brought on for hearing before the Honorable Dennis B. Leiber in the Kent County Circuit Court, 180 Ottawa Ave. N.W., Grand Rapids, Michigan, 49503, on Friday, November 1, 2002 at 1:30 p.m.

Dated: September 23, 2003

By Plaintiff,

Rashid Jahm
3009 Eastern SE Apt 303E
Grand Rapids, MI 49508
(616) 559-6185

STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

**RASHID A. JAHM,**

Plaintiff,                                      FILE NO. 00-08794-NI

V.                                              HON. DENNIS B. LIEBER

CITY OF WALKER, A Michigan Municipal
Corporation and EUGENE E. KARS.

Defendants.

RASHID A. JAHM                          SMITH HSUCHEY, RICE & ROEGGE
3009 EASTERN SE APT 303E                Craig R. Noland (P30717)
GRAND RAPIDS MI, 49508                  Attorneys for Defendants
(616) 559-6185                          200 Calder Plaza Building
                                        250 Monroe, NW
                                        Grand Rapids, MI 49503-2251
                                        (616) 774-8000

## RESPONSE OF PLAINTIFF MOTION OPPOSING DEFENDANTS' PROPOSED JUDGEMENT

**NOW COMES Plaintiff Rashid A. Jahm this letter is a written objection within the seven (7) days of the received correspondence, pursuant to MCR 2.602 (B)(3) the proposed Judgement dated September 16, 2002.**

> **1. Due to Mr. Craig Noland's false statements, Slander,Libel and Malice that clearly show the racial state of his mind towards the plaintiff, these tactics were used to exploit and influence the jury to reach a seriously erroneous result of straight NO which require a new trial or file in the court of appeal in the interest of justice. A request of investigation of the whole trial including tampering of the pictures of the accident and admission of Mr. Kars not applying the brakes and not knowing the reason why he did not apply the brakes. That is question of investigation.**
>
> **2. MCR 2.611 New Trial Amendments of Judgement –**
> **Based on the evidence and testimonials presented during the trial, the jury clearly went against the greater weight of evidence of the Plaintiff. This was due to Mr. Craig Noland continually misleading the jury by presenting irrelevant and erroneous facts, mentioning my divorce and advising the jury that I did not get approved for disability, which was another false statement on his behalf. The intentional misrepresentation of my character, by continually belittling me and describing me as a greedy man. He even went so low as to use the tragedy of 9/11, to mention my visit to see my family in Pakistan.**
>
> **3. MCR 2.115 under this rule pleading was false and vague, MR. Craig Noland's insulting Language was a defamation of the Plaintiff's character, he even mentioned to the jury, that he was 'boring them all by picking on him' (the plaintiff).**
>
> **4.  Harassing my witnesses by bringing the police chief in the uniform which was a another tactics that he uses to accomplish his mission.**

request the court to provide the previous case that Mr. Craig Noboth has defended as they may have been denied a fair trial based on his courtroom tactics and ethics. Therefore, the Plaintiff respectfully requests that this court enter the order to bar any requests from the defendant's party until this investigation is completed.

Dated: September 22, 2002         By:

                                      **Rashid A. Jahm**
                                      **3009 Eastern SE Apt 303E**
                                      **Grand Rapids, MI 49508**
                                      **(616) 559-6185**

*//*

00-08794-NI    JAHM, RASHID A vs. MICHIGAN STATE POLICE et al

| No. | Date of Filing | Operator Pleadings and Actions<br>Journal Book-Page-Nbr     Ref Nbr | Original Amt Due/<br>Amt Dismissed | Balance Due |
|---|---|---|---|---|
| 111 | 09/06/02 | cnvKCVdk Partial transcript of trial filed. ( Pages= 43,<br>t00      condensed )<br>(heard on 8/28/02)   (Shawn M. Breimayer) | 0.00 *change which is correct?* | 0.00 |
| 112 | 09/09/02 | cnvKCVdk Verdict Form filed.<br>t00 | 0.00 | 0.00 |
| 113 | 09/09/02 | cnvKCVdk Record of jury trial filed. (11th day, September<br>t00      9, 2002) | 0.00 | 0.00 |
| 114 | 09/16/02 | cnvKCVdk Notice of submission of order pursuant to MCR<br>t00      2.602(B)(3)<br>and proof of service filed. | 0.00 | 0.00 |
| 115 | 09/17/02 | cnvKCVdk Response to proposed judgment for defendants and<br>t00      proof of<br>service filed. by Stephen C. Bransdorfer on<br>behalf of Rashid<br>A. Jahm | 0.00 | 0.00 |
| 116 | 09/17/02 | cnvKCVdk Motionfor withdrawal as counsel for plaintiff<br>t00      Rashid A.<br>Jahm, notice of hearing & proof of service<br>filed. mt fee pd.<br>( set for 10/4/02 @ 8:30 a.m. ) | 0.00 | 0.00 |
| 117 | 09/18/02 | cnvKCVdk Request for retrial filed.<br>t00 | 0.00 | 0.00 |
| 118 | 09/20/02 | cnvKCVdk Motion for entry of judgment, notice of hearing,<br>t00      brief &<br>proof of service filed. mt fee pd. ( set for<br>10/4/02 @ 8:30<br>a.m. ) | 0.00 | 0.00 |
| 119 | 09/23/02 | cnvKCVdk Notice of hearing on plaintiff's motion and<br>t00      objection<br>opposing defendants' proposed judgment filed. (<br>set for<br>11/1/02 @ 1:30 p.m. ) | 0.00 | 0.00 |
| 120 | 09/23/02 | cnvKCVdk Objection, response of plaintiff motion opposing<br>t00      defendant's<br>proposed judgement filed.   by Rashid A. Jahm | 0.00 | 0.00 |
| 121 | 10/04/02 | cnvKCVdk Proof of Service filed.  (Order Authorizing<br>t00      Withdrawal of<br>Counsel for Plaintiff Rashid A. Jahm) | 0.00 | 0.00 |
| 122 | 10/04/02 | cnvKCVdk Order withdrawing counsel filed. forJahm whose | 0.00 | 0.00 |

February 19, 2002

Linda Bradley, Claims Specialist
State Farm Insurance Company
PO Box 9209
95 Gezon Parkway
Wyoming MI 49509

Dear Linda:

I am responding to your January 24th letter in regard to Jahm Rashid.

As described in my letter, I diagnosed him as having depressive disorder, not otherwise specified, and a cognitive disorder, not otherwise specified. They are diffuse problems with logical thinking, decision-making, and action. The timing of the onset of these symptoms is congruent with the accident he had in October 1999. I have not been able to identify any other explanation for the symptoms. Hence I would consider them to be the results of the October 31st 1999 motor vehicle accident.

I hope this information is helpful.

Sincerely,

Philip S Fox MD

D021902
T022202cbh

# AFFIDAVIT OF PHILLIP FOX, M.D.

PHILLIP FOX, M.D., being duly sworn, says as follows:

1.    He is a licensed allopathic physician with offices located at 300 - 68th Street, S.E., Grand Rapids, Michigan.

2.    He is a psychiatrist whose practice includes regular diagnosis and treatment of patients with closed head injuries.

3.    Rashid Jahm is a patient of the undersigned and has received ongoing treatment from the undersigned.

4.    Rashid Jahm last received treatment as a patient of the undersigned on Tuesday, February 5, 2002.

5.    Based on my examinations and treatment, it is my conclusion at this time that Rashid Jahm suffered a serious neurological injury as a result of the automobile collision on October 31, 1999.

$\times$ 8

Dated: February 7, 2002

Phillip Fox, M.D.

Subscribed and sworn to before me this $7^{th}$
day of *February*, 2002.

*Sandra J. Rickert*
Notary Public
County of *Kent*
State of *Michigan*
My Commission Expires: *12-20-2006*



**The Spine Program**
UNIVERSITY OF MICHIGAN HEALTH SYSTEM

325 East Eisenhower Parkway
Second Level
Ann Arbor, MI 48108-0744

Patient Services:   734-998-6644
                    888-254-BACK
General Business:  734-615-1750
               Fax:  734-615-1770
website: www.med.umich.edu/pmr/spine
email: spine_program@umich.edu

Andrew J. Haig, MD
Medical Director
January 30, 2000

To: Amy Waters
Circuit City Stores inc
Personnel/Disability
Fax 804-527-4068

Re: Rashed Jahm
Our patient number 30779204

Dear Ms. Waters,

I spoke to Karen McKittrick of your office today regarding Mr. Jahm, a Michigan
employee who is in your caseload. Mr. Jahm has given me permission to discuss medical
and social details of his case with Circuit City.

Basically, this gentleman was involved in a motor vehicle accident, with subsequent head
injury (perhaps mild deficits), neck pain (with objectively documented nerve damage)
and clinical depression. We've just gotten to the point where we have a specific plan for
a multidisciplinary rehabilitation program to assist him in his recovery. The prognosis
for this man, is quite good for return to full duties, especially given his past history which
reflects intelligence and hard work.

Mr. Jahm is quite concerned about his performance in the past at work. He describes
mental lapses and physical difficulties, for example. He fears that if he is not put on short
term disability he will be terminated for poor performance.

I could put him on short term disability, and will do so if the company sees him as about
to be terminated. But the best thing for Mr. Jahm (as well as for your disability payment
system, I hope) is to have him continue his duties when out in therapy. Ms. McKittrick
was quite supportive of his continued employment during this rehabilitation period. She
assured me that the company has a partial duty policy and the company will try to
communicate with me should he be at risk for termination.

By this letter, I restrict him from some activities-he cannot lift over 20 lb, cannot perform
highly repetitive overhead lifting. He should not be involved in mathamatical or financial
calculations beyond the running of his cash register. He should not be placed in highly
stressful social situations without some back-up from other employees. Finally, he will
need time to commute to Ann Arbor for participation in a multidisciplinary rehabilitation

University of Michigan
Health System

(5)

## Jahm p. 2

approach, the "Pain Management Program" here at The Spine Program. The exact dates
and times are not yet established, but therapy will be a few times a week for about two
months. I anticipate that these restrictions will be substantially decreased or eliminated
after rehabilitation.

Thank you and Circuit City for supporting his rehabilitation. Feel free to communicate
any issues with me via my academic office number at 734-615-1750 x 221.

Sincerely,

Andrew J. Haig, M.D.
Associate Professor, Physical Medicine and Rehabilitation and Surgery
Director, the Spine Program
The University of Michigan


Metropolitan Hospital

# NEUROSCIENCE DEPARTMENT

| PATIENT NAME | MEDICAL RECORD # | | DATE |
|---|---|---|---|
| JAHM, RASHID A | 000501657 | | 12/07/2000 |
| PROCEDURE | SEX/AGE | DOB | PT TYPE |
| EMG AND NCT STUDIES | M/49 | 06/25/1951 | OP |

PHYSICIAN(S)

Ordering:  Farook J Kidwai, MD    Interpreting:  Michael W Grof, DO    Steve L Lasater, MD

REASON FOR REFERRAL:
Rule out cervical radiculopathy on the left.

CLINICAL SUMMARY:
Nerve conduction studies were performed in left upper limb. All sensory and motor nerves te :ed
demonstrated normal distal latencies, amplitudes and conduction velocities. The patient comp!ains of
numbness in the ulnar distribution, but the ulnar nerve tested normal in all segments. The ulnar F wave
was normal.

An EMG needle study of selected muscles in left upper limb demonstrates a few scattered posi:ive sharp
waves and fasciculations in muscles heavily innervated by C7 and C8. There is slight reduced motor unit
recruitment in C7 innervated muscles.

CLINICAL INTERPRETATION:
Mildly abnormal EMG. There is evidence of mild irritability of the motor units of C7 and C8. There is
no evidence of any significant recent denervation. I find no evidence of brachial plexopathy or
entrapment neuropathy.

MWG:12/07/2000
kkd:12/08/2000  5:00 P
Doc # 105924

*Per dictation.  Signed report on file*
Michael W Grof, DO

Metropolitan Hospital

## NEUROSCIENCE DEPARTMENT

| PATIENT NAME | MEDICAL RECORD # | | DATE |
|---|---|---|---|
| JAHM, RASHID A | 000501657 | | 02/07/2002 |
| PROCEDURE | SEX/AGE | DOB | PT TYPE |
| EMG AND NCT STUDIES | M/50 | 06/25/1951 | OP |

PHYSICIAN(S)

Ordering: Johnathan G Meier, DO    Interpreting: Michael W Grof, DO

REASON FOR REFERRAL:

Rule out lumbosacral radiculopathy on the left.

CLINICAL SUMMARY:

Nerve conduction studies were performed in left lower limb. All sensory and motor nerves tested normal for distal latencies, amplitudes, and conduction velocities with the exception of the tibial motor amplitude, which is abnormally low. The H wave reflex is also mildly prolonged for this leg length.

EMG needle study of selected muscles in left lower limb, demonstrates mild abnormal insertional activity in S1 innervated muscles. However, motor unit recruitment appeared to be normal.

CLINICAL INTERPRETATION:

Mildly abnormal EMG. There is evidence of a very slight S1 radiculopathy on the left without evidence of any significant recent denervation.

*Per dictation. Signed report on file.*
Michael W Grof, DO

MWG:02/07/2002
bje:02/07/2002 2:01 P
Doc # 213514

8

**METROPOLITAN HOSPITAL**

**REGIONAL PAIN MANAGEMENT CENTER**
**(616) 252-7131**

## PROGRESS NOTE

Name: Rashid Jahm

Doctor: Keith Javery, D.O.

Date: October 20, 2000

Page: 1 of 1

---

Mr. Jahm reports back to the Metropolitan Hospital Pain Management Center after his second visit and his first invasive treatment for his post motor vehicle accident cervicalgia.

While he did note some pain relief with this, he is still having significant cervicalgia despite my best efforts so far and there does seem to be a bit of muscular spasm still going on, but otherwise he is unchanged from his first two visits.

I therefore held off from invasive therapy since, first of all he doesn't have a driver as previously instructed and second of all, he didn't get that much pain relief and I therefore started him Vioxx, 25 mg a day and Zanaflex, a useful muscle relaxant for the chronic pain patient at 4 mg up to twice a day. I warned him specifically against operating heavy machinery and driving while he is taking Zanaflex. I will see him back in about six weeks to check his progress, but I told him to continue his conservative therapy.

Keith Javery, D.O.
T: 10-24-00/sc

# MICHIGAN PAIN CONSULTANTS, PC

**PAIN MANAGEMENT CENTER**

4100 Lake Drive, SE • Suite 30!
Grand Rapids, MI 4954

**January 29, 2002**

Phone: 616.285.137
Fax: 616.285.100

**Rashid Jahm**      **(39059)**

**Page:**      **1 of 1**

Mr. Jahm reports back to the Michigan Pain Consultants Pain Management Center after seeing him a few months ago for his chronic left-sided cervicalgia, which is bothering him as a direct result of his motor vehicle accident.

His signs and symptoms today are still consistent with referred facet pain; and with inducement of non-neutral mechanics on his neck, I was able to exactly reproduce his neck pain and indeed involuntary muscular spasm was noted through the splenius cervices, splenius capitis and some of the scalene muscles as well on the left side only.

We did repeat the fluoroscopically guided zygapophyseal joint injection therapy since this does continue to give him good relief.

We therefore brought him to the fluoroscopy suite where he was placed in supine position on the fluoroscopy table.

After sterile prep and drape of the left side of his neck, the intraarticular portions of the zygapophyseal joints at C2-3, C3-4, C4-5, C5-6, C6-7 and C7-T1 on the left side only were entered with the 25-gauge 2-inch spinal needles.

After these joints were entered, a total dose of 5 mg of triamcinolone and 1 cc of 1% lidocaine were administered to each of those multiple joints. He tolerated the procedure well with no complications noted.

I have asked Mr. Jahm to see me back in the next few months if needed.

Mr. Jahm has also asked me if his pain is a direct result of his motor vehicle accident, and it is my medical opinion that indeed it is.

Keith Javery, D.O.
T: 01-30-02/slk





# DOCTORS CHIROPRACTIC

www.bestchirodocs.com

### *Specializing in Computerized Analysis and Treatment*
### 11827 East Fulton  Lowell, MI 49331

Dr. Paul Tuthill
paultdc@iserv.net

Phone (616) 897-4999  Fax (616) 897-1133

Dr. Anthony Trombly
doctrombly@yahoo.com

Mr. Stephen Bransdorfer
Attorney at Law
125 Ottawa Avenue
Grand Rapids, MI 49503

FILE

Report on: **Rashid Jahm**

Dear Mr. Bransdorfer,

The above captioned patient first entered this office on February 14, 2000 for examination and treatment of injuries sustained in an automobile accident which occurred on October 21, 1999.

## CHIEF SYMPTOMS

1. The patient has severe headaches at the base of his skull that started immediately after the impact.
2. The patient stated he felt gradual onset of neck pain and mid back pain within hours of the accident.
3. The patient states he cannot bend or turn his neck in any direction without severe pain.
4. The patient has shooting pains from his neck into his left arm.
5. The patient described shooting pain from his neck to mid scapula region.
6. Pain in the upper thoracic region.
7. Pain under the left scapula.
8. Pain in lumbar region.

## PAST HISTORY – NONCONTRIBUTORY EXAMINATION

The usual orthopedic, neurological and chiropractic tests were performed on this patient. Palpable cervical muscle spasms, palpable edema in the cervical region and incomplete range of motion through the cervical spine were present.

## X-RAY EXMANINATION

The usual x-ray studies were taken of this patient which aided me in determining his diagnosis which is described in the following.

Page 2
RE: Rashid Jahm

## DIAGNOSIS

The patient has sustained:

1. Acute traumatic severe sprain/strains to the cervical spine complicated by:
   A) hypolordosis
   B) multiple levels of Vertebral Intersegmental Dysfunction

2. Acute traumatic severe sprain/strain to the thoracic spine complicated by multiple levels of Vertebral Intersegmental Dysfunction

3. These spasms are accompanied by ligamentous instability, myofasitis, and localized evidence of nerve root irritation.

4. Left brachial neuralgia.

5. Acute traumatic moderate lumbar sprain/strain.

6. Acute traumatic moderate sacroiliac sprain/strain.

These injuries are of permanent nature.

## PROGNOSIS

Due to the extreme structural weakness of the cervical and thoracic spine, traumatically induced, and the neurological deficits manifested , it is apparent that the patient's symptoms are going to be recurrent. He can expect intermittent exacerbation's of pain and stiffness in the cervical and upper thoracic region, left arm pain, and headaches.

I feel that this patient has sustained permanent partial spinal impairment at 15% of the body as a whole. In view of this and to protect his future health, I plan to maintain Mr. Jahm under treatment and observation for a minimum of 90 days on a continued reduction of frequency basis.

If I can be of further assistance to you regarding this case, please feel free to contact me.

Sincerely,

Anthony Trombly, D.C.

# THE DENTAL HEALTH AND WELLNESS CENTER



KEVIN FLOOD, D.D.S.

4990 CASCADE ROAD SE
GRAND RAPIDS MI 49546

616-974-4990
FAX 616-974-4999

June 18, 2001

State Farm Insurance Companies
Attn: Alice McMillian
PO Box 9209
Wyoming, MI. 49509-0209

RE: Rashid Jahm
Claim Number: 22-V209-200
Date of Loss: 10-31-99
Account number: 41301
Date of Birth: 6-25-51

Dear Ms. McMillian,

Mr. Jahm was seen at this office on 3-15-01. His chief complaint at this visit was pain in his jaw joints. The following symptoms were noted: jaws feeling tired after eating; jaws ache when opening wide; noises in both jaw joints; and locking closed on several occasions.

The following signs were noted at the examination: clicking bilaterally in the temporomandibular joints; maximum opening without pain of 25 mm.; and a maximum opening with pain of 39 mm.

Mr. Jahm states his involvement on a motor vehicle accident on 10-31-99 as the start of his jaw symptoms. I have examined medical records from Dr. Nezwek; Dr. Byron Scott, Dr. Wildern, Dr. Cilla, Dr. Trombley, and Dr. De Leeuw. I have also examined the police accident report.

I am enclosing previous dental records for Mr. Jahm from Richard Nezwek dated 8-18-98. These records are approximately 1 year prior to the motor vehicle accident. There is no mention of "TMJ Dysfunction" mentioned by Dr. Nezwek.

It is my opinion that the motor vehicle accident of 10-31-99 caused the temporomandibular joint dysfunction that Mr. Jahm is presently experiencing.

I am requesting diagnostic records. I am waiting for your approval before any diagnostic records are taken. This request for diagnostic records will also include a narrative after I have had time to evaluate the records.

Please call if you have any questions. I am also including all the dental records I have had an opportunity to examine. Only the records of Dr. Nezwek pre-date the motor vehicle accident. Dr. Nezwek's records consist of two pages dated August 18, 1998.

*A Different Kind of Dentist*
















# Traffic Crash Report

Case 1:05-cv-11638-JLT   Document 32   Filed 02/07/2006   6 Page 56 of

| Crash Date | | | Crash Time | Department Name | File Class |
|---|---|---|---|---|---|
| Month | Day | Year | Military | | 9300-1 |
| 10 | 3 | 99 | 1011 | MSP- ROCKFO BD | |

Complete Disposition: Open ☑ Closed   Reviewer: Dmv

| No. of Units | Crash Type | Special Circumstances | Weather (Mark Only One) | Light (Mark Only One) | Rats (Report All) |
|---|---|---|---|---|---|
| 0 | 0 | 1. Single Motor Vehicle | | ☑ 1. None | ☑ 1. Clear | ☑ 1. Daylight | Corrected Copy |
| 2, 2, 2, | 2. Head On | 2. Deer | 2. Cloudy | 2. Dawn | Replace (Entire Report) |
| 3, 3, 3, | 3. Head On-Left Turn | 3. School Bus | 3. Fog/Smoke | 3. Dusk | Delete |
| 4 | 4. Angle | 4. Hit and Run | 4. Rain | | (Entire Report) |
| -5, 5, 5, | 5. Rear End | 5. Fleeing Police | 5. Snow/Blowing Snow | 4. Dark-Lighted | Non-Traffic Area |
| 6 | 6. Rear End-Left Turn | | 6. Severe Wind | 5. Dark-Unlighted | ORV/Snowmobile |
| 7 | 7. Rear End-Right Turn | | 7. Sleet/Hail | 6. Other Unknown | |
| | 8. Sideswipe-Same | Special Study | 8. Other/Unknown | | |
| | 9. Sideswipe-Opposite | 1. Local | | | |
| | 10. Other/Unknown | 2. State | | | |

| County | City/Twp | Traffic Control | Construction Zone (if applicable) | Relation to Roadway | Area | Road Condition | Total Speed |
|---|---|---|---|---|---|---|---|
| 41 | 69 | 1. Signal | (Mark One From Each Group) | (Location of First Impact) | (Mark Only One) | (Mark Only One) | Lanes Limit |
| | | 2. Stop Sign | Activity | ☑ 1. On Road | | ☑ 1. Dry | |
| | | 3. Yield Sign | Type   Lane Closed | 1. On Road | | 2. Wet | |
| | | 4. None all of These | 1. Const./Maint. 1. Yes | 2. Off Road | 2. Medium | 3. Icy | |
| | | | 2. Utility 2. No | 3. None | 3. Shoulder | 4. Snowy | |

Location on   ALPINE AVE

Name:

☐ FT   ☐ MI   North ☐ East ☐   Beginning of Ramp
25                South ☐ West ☐   End of Ramp

Intersection:   3 MILE RD

| | | 1. On Road | | 1. Dry |
| | | 2. Medium | | 2. Wet |
| | | 3. Shoulder | | 3. Icy |
| | | 4. Outside of Shoulder/Curb | | 4. Snowy |
| | | 5. Gore | | 5. Muddy |
| | | 6. Other/ | | 6. Slushy |
| | | Unknown | | 7. Debris |
| | | | | 8. Other/ |
| | | | | Unknown |

7. Posted ☑ Yes   9. No

| Unit Number | State | Driver License Number | | | | Date of Birth | | | License Type | Sex | Hazard |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | mI | J 500 730 035 497 | | | | Month | Day | Year | O CY | M | Action |
| 1 | | | | | | 06 | 25 | 51 | C F | F | |
| | | | | | | Pashion | Restraint | Ambulance/Hospital | M R | | |
| | | | | | | 1 | 4 | NONE | | | |

First Name   RASHID
Middle   AHMAD
Last   JAHM

Street Address   3009 EASTERN APT 303E
Phone Number   559-6185

| Unit Type | City   GRAND RAPIDS | State   MI | Zip   49508 | Injury | Ejected | Yes | Citation Issued |
|---|---|---|---|---|---|---|---|
| MV | | | | K Trapped Yes | | 1. Hazardous |
| P | Alcohol   Test Type   Breath | Test   Results | | A | | 2. Other |
| B | HBO | Field   Urine | | 6. Airbag Deployed | | |
| E (train) | Yes No   PBT   Blood   Refused   Not Offered | | | C 1. Yes 2. No | NONE | |
| | | | | 0 3. Not Equipped | | Total Occup |

Vehicle Registration   State   VIN
RUP981   mI   1G4HR3733GH460948   Vehicle Description (year, make, color)   86 BUICK 2DR BRN

| Insurance   STATE FARM | Towed To/By   NONE | Vehicle Direction   North East South West | Special Vehicles 1 2 3 4 5 6 |
|---|---|---|---|

Location of Greatest Damage

| | Vehicle Type | Vehicle Use |
|---|---|---|
| 0 1 2 3 4 5 6 7 8 9 10 11 12 | PA CY OR   VA MO Other   PU GC   Truck/Bus Vehicle Defect | 1 2 3 4 5 6 7 8 9 10 11 |

First Impact   Extent of Vehicle Damage   Driveable
3   0 1 2 3 4 5 6 7   Yes   No

ST SM   (Complete Truck/Bus Section)   Private Trailer Type
1 2 3 4 5 6   1 2 3 4 5 6

| First Name | Middle | Last | | Date of Birth | | Sex M F | Ejected Yes |
|---|---|---|---|---|---|---|---|
| | | | Month | Day | Year | | Trapped Yes |
| Street Address | | Phone Number | | | | Injury K B O   A C | |
| | | | Pos. | Rest. | Ambulance/Hospital | | Airbag Deployed |
| City | State | Zip | | | | | 1. Yes 2. No   3. Not Equipped |

| First Name | Middle | Last | | Date of Birth | | Sex M F | Ejected Yes |
|---|---|---|---|---|---|---|---|
| | | | Month | Day | Year | | Trapped Yes |
| Street Address | | Phone Number | | | | Injury K B O   A C | |
| | | | Pos. | Rest. | Ambulance/Hospital | | Airbag Deployed |
| City | State | Zip | | | | | 1. Yes 2. No   3. Not Equipped |

| Witness / Owner Name | Address | Phone Number | Age | Pos | Rest |
|---|---|---|---|---|---|
| Uninjured Passenger | | | | | |
| Witness / Owner Name | Address | Phone Number | Age | Pos | Rest |
| Uninjured Passenger | | | | | |

| Person Advised of Damaged Traffic Control | Date | Time | Name | Damaged Property | Public Owner & Phone |
|---|---|---|---|---|---|

Do Not Write or Mark in This Area

UD-10 Form Number   .9012597   Form Override Number

Forward Original To: Michigan Department of State Police, Criminal Justice Data Center, 7150 Harris Drive, Lansing, MI 48913

Do Not Write or Mark On This Side of The Line

**M I A**

| | | |
|---|---|---|
| First Name | Middle | Last |
| EUGENE | EDWIN | KARS |

Street Address: 4278 YORKSHIRE DR    Phone Number: 669-2561

City: HUDSONVILLE    State: MI    Zip: 49426

Unit Type: MV    B    P    E (train) Yes / No

Alcohol: Test Type ___ Breath ___ Test Results ___
HBD    Field    Urine
PST    Blood    Refused    Not Offered

Position ___ Restraint ___ Ambulance/Hospital ___
Injury ___ Ejected Yes / Trapped Yes / Other
Airbag Deployed NONE

Vehicle Registration: 253X38    State: MI    VIN: 2FAFP71WXWX147363

Insurance: MKH. MUNICIPAL LIABILITY    Towed To By: NONE

Location of Greatest Damage ___

Vehicle Description (year, make, color): 98 FORD 400 PLU

Vehicle Direction: North / East / South / West  1 2 3 4 5 6

Vehicle Use: 1 2 3 4 5 6 7 8 9 10 11

Vehicle Type: PA  VA  PU  ST  CY  MO  CY  PU  SM    OR

Vehicle Defect: 1 2 3 4 5 6

Private Trailer Type: 1 2 3 4 5 6 7

First Impact: 1    Extent of Vehicle Damage: 0 1 2 3 4 5 6 7    Driveable: Yes / No

---

**Crash Diagram and Remarks**

ALPINE AVE

3 MILE RD

#2 WAS RESPONDING TO ALARM W/ LIGHTS SIREN ACTIVATED. #2 STOP, WAITING FOR NB TRAFFIC, THEN ATTEMPTED TO TURN NEXT. #2 STRUCK #1 WHO WAS SB. #1 STATED HE NEVER SAW LIGHTS OR HEARD SIREN.

---

**Unit Reported on Front** / **Unit Reported Above**

**Truck/Bus Information**    Unit No.

Carrier Name ___
Address ___
City ___    State ___

Carrier Source: Papers / Log Book / Vehicle / Driver
ICCMC
USDOT
MPSC
Interstate / Intra/IM Only
Type & Axles Per Unit

GVWR ___
Driver's CDL Type: A / B / C / T
CDL Restrictions
CDL Exempt: None / X / Farm / Other
Medical Card: Y / N
Hazardous Material: Placard / Cargo Spill

UD-10 Form Number: 9012597    Investigated Reported Date/Time at Scene: 10-31-99 / 1011 HRS.

Investigator Name(s) & Badge #: TPR. K. EHRKE    1622

Sep 11 '00   14:04   P.02

# Social Security Administration
# **Retirement, Survivors and Disability Insurance**
Notice of Award

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date: September 29, 2002
Claim Number: 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HA

RASHID A JAHM
3009 EASTERN SE
APT 303E
GRAND RAPIDS, MI 49508-1368

I.I..II.I..I.I.II...I..I...II.II.II.I..I..II.I.I.I.I.I

You are entitled to monthly disability benefits beginning August 2001.

### The Date You Became Disabled

We found that you became disabled under our rules on February 6, 2001.

However, you have to be disabled for 5 full calendar months in a row before you can be entitled to benefits. For these reasons, your first month of entitlement to benefits is August 2001.

### What We Will Pay And When

- You will receive $6,013.00 around October 5, 2002.

- This is the money you are due for August 2001 through August 2002.

- Your next payment of $469.00, which is for September 2002, will be received on or about the fourth Wednesday of October 2002.

- After that you will receive $469.00 on or about the fourth Wednesday of each month.

The day we make payments on this record is based on your date of birth.

Enclosure(s):
Pub 05-10153

**REC'D & FILED**

DEC 1 0 2002

JUDGE LEIBER
17TH JUDICIAL CIRCUIT

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

W. Burnell Hurt

W. Burnell Hurt
Associate Commissioner for
Central Operations



**Building Inspections Department**
Telephone 616/530-7285 Fax 616/249-3484
1155 - 28th Street, S.W., Box 905 Wyoming, Michigan 49509-0905
Web: www.ci.wyoming.mi.us

Tuesday, August 19, 2003

MAYOR
Douglas L. Hoekstra, Jr.

COUNCILMEMBER-AT-LARGE
Carol S. Sheets

COUNCILMEMBER-AT-LARGE
Jack A. Poll

COUNCILMEMBER-AT-LARGE
Kevin J. Green

COUNCILMEMBER 1ST WARD
William Ver Hulst

COUNCILMEMBER 2ND WARD
Richard K. Pastoor

COUNCILMEMBER 3RD WARD
Dawn E. Wichmann

CITY MANAGER
Curtis Holt

## NOTICE OF CONDEMNATION

AMSTERDAM GARDENS ASSOC
3007 EASTERN AVE SE
GRAND RAPIDS MI 49508-1320

THE CHOICE GROUP
SHOUHAYRB INVESTMENT CO.
CHOICE DEVELOPEMENT CORP.
755 BIG BEAVER ROAD, STE 1275
TROY MI 48084

DESCRIPTION OF PROPERTY: 3003 SE EASTERN AVE 3011
PP#41-18-18-276-012

This letter is to notify you that the above property has been posted with a "**NOTICE of CONDEMNATION**" sign by the Wyoming Department of Inspections on **08/18/03** because it does not conform to the requirements of the Wyoming Property Maintenance Codes. The items checked below indicate the reasons for posting:

X  Alteration or damage to existing buildings.
X  Unsafe buildings, Wyoming Property Maintenance Code
X  Unsafe Wiring, plumbing or heating.
X  Unsafe chimney or vent.
X  Unsanitary conditions.
X  Lacks required facilities.
X  Faulty water and/or sewage system.
X  Rodent or vermin infestation.
X  Inadequate light and ventilation.
X  Inadequate or unsafe exits.
X  Improperly maintained.
X  Exterior structure not in compliance.
X  Interior structure not in compliance.

The following sections of the Property Maintenance Code have been violated because of the above: Dangerous Building PM-110.1(a)(1)(3)(6)(8)
Property Conditions: Code sections as applicable in repair notices previously sent
Chapter 10-176 through 10-180 of the City of Wyoming Code.

A Housing Board of Appeals meeting has been reserved for Sept. 4, 2003 at 7:00p:m. at the City Hall Council Chambers should an interested party desire to appeal.

RIGHT OF APPEAL: Any person who is aggrieved with the ruling or decision of any City Official may appeal such ruling or decision to the Housing Board of Appeals. Such appeal shall be in writing on the form supplied by the Inspections Dept., and shall be filed within 10 days of the posting of this notice.

Occupancy or use of the building after _August 19, 2003_ is prohibited by law until the necessary corrections are made and permission to occupy is granted. The premises will be reinspected on or about Sept. 25, 2003 for compliance with this directive.

CITY OF WYOMING

Gerald J. Mears
Director of Planning/CD/Inspections

James W. DeLange
Chief Building Official

L. Roland Roegge
Thomas F. Blackwell
P. Laurence Mulvihill [1]
Thomas R. Tasker [1]
Lance R. Mather [2]
Charles F. Behler
Gary A. Rowe
Edward R. Stein
William W. Jack, Jr.
William J. Hondorp
Thomas M. Weibel
James G. Black
E. Thomas McCarthy, Jr.
Glenn W. House, Jr.
Craig R. Noland
Paul M. Oleniczak [3]
Craig S. Neckers
George F. Bearup
John C. O'Loughlin
Anthony J. Quarto

John M. Kruis
Paul Van Oostenburg
Mark P. Bickel
William R. Jewell
Jon D. Vander Ploeg
Patrick F. Geary [4]
R. Jay Hardin
Terence J. Ackert
Brian J. Kilbane
Charles B. Judson [3]
Robert C. Stone [3]
Robert W. Tubbs
Douglas G. Powe
Richard C. Kraus
Albert J. Engel, III [1]
Phillip K. Mowers
Carol D. Carlson
Marilyn S. Nickell Tyree
Christopher R. Genther
Beth S. Kromer [4]

A Professional Corporation
ATTORNEYS AT LAW

**200 Calder Plaza Building**
**250 Monroe Avenue, N.W.**
**Grand Rapids, Michigan 49503-2251**
**Telephone 616-774-8000**
**Fax 616-774-2461**

1400 Abbott Road, Ste. 410
East Lansing, Michigan 48823-1902

202 E. State Street, Ste. 100
Traverse City, Michigan 49684

320 N. Main Street, Ste. 101
Ann Arbor, Michigan 48104-1127

Robert M. Kruse
Jeffrey R. Wonacott
Aileen M. Leipprandt
David J. DeGraw
Robert W. Parker
Paul T. Jarboe
Jeffrey E. Gwillim
Randall L. Velzen
John R. Oostema
Matthew L. Meyer
Martha P. Forman
Todd W. Millar
Veronica A. Marsich
Karl W. Butterer, Jr.
Garrett J. TenHave-Chapman
Peter J. Boyles [1]
Thomas R. TerMaat
Jane C. Hofmeyer
William A. Sikkel, IV
Rachel Brochert Roe

Jo Beth Earl [1][2]
Angela T. Ross
Eric W. Phelps
Kevin M. Lesperance [4][5]
Heather R. Blanton-Dykstra
Timothy D. VandenBerg
Jeffrey J. Noorman
William L. Henn
Kirk W. Morgan
Mark A. Gilchrist
Brian A. Molde

Also licensed in:
1 Colorado
2 District of Columbia
3 Florida
4 Illinois
5 Indiana
6 Pennsylvania
7 Wisconsin
8 Georgia

http://www.shrr.com

A. B. Smith, Jr.
David O. Haughey
Lawrence P. Mulligan
Albert T. Quick
Brenda Jones Quick
Of Counsel

Robert V. V. Rice
1899-1982

Laurence D. Smith
1913-1980

Michael S. Barnes
1944-1989

September 19, 2002

**Writer's Direct Dial Number**
**(616) 458-9466**

Stephen C. Bransdorfer
BRANSDORFER & RUSSELL, LLP
161 Ottawa N.W., Ste. 411-S
Grand Rapids, MI 49503-2898

> **Re:** **Rashid Jahm v Eugene Kars and City of Walker**
> **Case No. 00-08794-NI**
> **Our File No. 70483**

Dear Mr. Bransdorfer:

Confirming our telephone discussion of September 19, please advise your client not to communicate with my client. Also, please advise your client not to make false accusations. Thank you.

Very truly yours,

SMITH HAUGHEY RICE & ROEGGE

Craig R. Noland

CRN:rad

**BRANSDORFER & RUSSELL, LLP**

## MEMORANDUM

To:      File

From:    SCB

Date:    October 4, 2002

Client:  Jahm

The following memorandum is dictated following the hearing on October 4, 2002, before Judge Leiber regarding: (1) the Motion for this firm to Withdraw as Counsel and (2) the Entry of Judgment based on the jury verdict.

The hearing for these motions was scheduled for 8:30 a.m. based on the Kent County Clerk's office indication that civil hearings would be held today by Judge Leiber at that time. The commencing time was wrong. Judge Leiber was scheduled to hold civil case hearings today commencing at 1:30 p.m. Accordingly, Rashid Jahm, SCB and Craig Noland waited an hour and a half before Judge Leiber came to court.

After he arrived, he discussed the pending motions in chambers with Attorney Noland and SCB. He apologized for the misunderstanding as to the time of commencement. He agreed to hold the hearings that morning. Among the matters discussed by Noland in chambers was his concern that Rashid Jahm might pose a physical threat to him. The Judge said he had been threatened many times and that Noland could treat his concern accordingly as he saw fit.

The hearing in open court on the Motions was held commencing at 10:15 a.m.

The first matter heard was the motion for this firm to withdraw as counsel. After SCB's presentation the Judge asked Rashid Jahm to respond. The thrust of his response was that he did not object to the motion but felt he was improperly treated at trial. The Judge told him to bring that up at the hearing on Entry of Judgment. During this part of the proceeding the Judge stated that he had received a letter with handwriting from Rashid Jahm regarding the Judgment. He asked Rashid Jahm as to whether a copy was sent to Noland. Jahm said, "No." The Judge told him that this was wrong and that on any matters that go to a Judge, he must give opposing counsel a copy of all such materials.

Following the hearing on this matter, the Judge stated he would enter the Order Allowing Withdrawal of this firm as counsel. The Order was then entered as prepared by SCB. A copy was then served personally on Noland and Jahm by SCB.

The next matter to be heard was Entry of the Judgment. Noland made a brief statement indicating that the Judgment was based upon the entry of the verdict in favor of defendants based on its finding in the jury verdict form; that there was no negligence or gross negligence. The Judge then called on Rashid Jahm for his response. The Judge said that he had received from Jahm a statement giving notice that Attorney Noland had committed fraud and defamation. The contents of that letter and its attachments were not read into the record but were kept by the Judge. He made a copy of those materials and gave them to Noland.

Jahm then made a statement to the Court making specific complaints about why the trial was not conducted fairly and contained prejudicial statements made by Noland. He referred to "9-11." He also referred to Officer Kars not putting on the brakes of his car when he struck Rashid Jahm's car. He showed the Judge two pictures of the post that Rashid Jahm's car hit when sliding off the road in the second automobile accident when he was returning from Ann Arbor. The Judge told him that had these been submitted, he would not have permitted them into evidence because of the confusion those exhibits would have created. The Judge said, "That accident was not on trial." Following a heated and oblique type recitation by Jahm, the Judge raised his voice and told him to be quiet. He said the court reporter could not take down his statements because he was talking so fast.

Following the presentation by Jahm, Judge Leiber said that he was treating the information that Jahm supplied to the Judge at this hearing as a motion for a new trial. He then said he was denying the motion for a new trial for the reason that the proofs indicated that there was no negligence or gross negligence. He said the proofs showed that Officer Kars looked to his left before going into the intersection and striking Jahm's car. He said the vision was blocked by two vehicles that had stopped to the left of the intersection. Accordingly, he said this was a "accident without fault on any party." The Judge then said, "It's your decision whether you or your lawyer take an appeal." He referred to Rashid Jahm getting the Michigan Rules of Court by calling 1-800-328-9352. The Judge explained to him that he or his other possible lawyer had to comply with the Michigan Rules of Court as to any possible appeal.

The Judge then signed the Judgment and gave confirmed copies to Noland. Noland attempted to hand a copy to Jahm. Jahm refused to accept it saying, "Put it in the mail." Judge Leiber then shouted to Jahm, "You take that paper now. I am directing you to take that now." Jahm then accepted the copy of the Judgment.

Upon returning to the office, SCB prepared a letter of today's date, 10-4-02, to Rashid Jahm enclosing the Proof of Service of the Order of Withdraw of Counsel. The letter to Jahm was mailed today also enclosing a copy of the Judgment and a copy of the applicable court rules dealing with judgment and possible appeal. The letter also stated that this office would be fully cooperative in making available all files in this case.

2

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

RASHID A. JAHM,

       Plaintiff,

                             Case #00-08794-NI

v

CITY OF WALKER, a Michigan
Municipal Corporation and
EUGENE KARS,
       Defendants.

MOTIONS
BEFORE THE HONORABLE DENNIS B. LEIBER
Thursday, October 4, 2002 - Grand Rapids, Michigan

APPEARANCES:

FOR THE PLAINTIFF:  Stephen C. Bransdorfer (P11133)
                    161 Ottawa Ave, NW, Ste 411-S
                    Grand Rapids, MI  49503
                    (616) 774-8422

FOR THE DEFENDANT:  Craig R. Noland (P30717)
                    200 Calder Plaza Bldg
                    250 Monroe NW
                    Grand Rapids, MI  49503
                    (616) 774-8000

**COPY**

Reported by:   Shawn M. Breimayer, CSR (6888)

TABLE OF CONTENTS

WITNESSES:
  (None)

EXHIBITS:
  (None marked)

```
1                    (Hearing commenced at 9:53 AM)

2              THE COURT:  Mr. Jahm, would you come forward,

3         please, to sit at the table?

4              MR. JAHM:  Sir, I have to say something.

5              THE COURT:  Yes.  I'll give you a chance, but just

6         have a seat, please.  I want to announce the cases and make

7         a proper record.  If you let me do my job, I will give you

8         an opportunity to do yours as well.  This is case number

9         00-08794-NI, in the matter of Rashid Jahm versus the City

10        of Walker.  Present are the plaintiff and his attorney

11        Stephen Bransdorfer, and appearing on behalf of defendants

12        is Craig Nolan.

13             These matters were scheduled for apparently 8:30

14        this morning consistent apparently with our former practice

15        historically through 1998, but, as of that date, all civil

16        and criminal motions then became, by administrative order,

17        to be heard on Friday afternoon beginning at 1:30 and all

18        domestic matters are heard at 8:30.  I know that's

19        confusing, but that explains, I hope, to Mr. Jahm's counsel

20        why I wasn't immediately available at 8:30.  I simply did

21        not anticipate nor did I receive notice of that date.

22             It's a matter of inconsequence except for the

23        inconvenience it's caused these parties unintentionally and

24        unintended by the hour now being 10:00 o'clock.  I assure

25        you I haven't been idle.  I have been working on other
```

1   motions.   I worked late last night, which is why I came in

2   late this morning.   Thank you for giving me the opportunity

3   to explain.

4          I will hear these motions.   Mr. Jahm has filed a

5   motion card which was scheduled for 1:30, but I'll hear it

6   this morning as well.   Two motions have been filed.   Mr.

7   Bransdorfer, you may proceed.

8          MR. BRANSDORFER:   Thank you, your Honor.   The motion

9   that we have filed is a motion to withdraw as counsel for

10  Mr. Jahm.   We've explained to him, as well as placed in

11  writing, the reason that that is required by us to be done.

12         It's done in accordance, as indicated in the motion,

13  with the rule of professional behavior, if you will, rules

14  of professional conduct 1.16, and it states as follows;

15  declining or terminating representation, except as stated

16  in paragraph C, a lawyer may withdraw from representing a

17  client if withdraw can be accomplished without material

18  adverse effect on the interest of the client or if -- and

19  sub 3 states, the client insists upon pursuing an objective

20  that the lawyer considers repugnant or imprudent.

21         And paragraph 5 of rule 1.16 states the

22  representation will result in an unreasonably financial

23  burden on the lawyer or has been rendered unreasonably

24  difficult by the client.   And sub D, your Honor, which we

25  always refer to in the motion of rule 1.16 states upon

1    termination of representation, a lawyer should take

2    reasonable steps to protect a client's interest such as

3    giving reasonable notice to the client, allowing employment

4    of other counsel, surrendering paper or property to which

5    the client is entitled and refunding any payment or fee

6    that has not been earned the lawyer, retain paper of the

7    client to the extent permitted by law.

8         Your Honor, as indicated in the motion, we fully

9    intend and have indicated to Mr. Jahm to comply with rule

10   1.16 sub D, and have explained to Mr. Jahm and put this in

11   writing what steps he may take, assuming that the court

12   feels that it is necessary for us to and that we have a

13   basis for withdraw.  In short, your Honor, the withdraw is

14   based on our inability at this point to have a

15   recommendation and the communications that we have been

16   making to Mr. Jahm understood and approved by him.

17        Specifically, this unfortunately started with the

18   document that is the subject of the second motion, and that

19   is a motion brought by opposing counsel.  And that is to

20   approve, as to form, the judgment entered by the jury.  We

21   do have the exhibits as the Court knows, they are given

22   back to counsel.  We have those exhibits.  There is a

23   stipulation that has not been executed as to the

24   transcripts that were read -- the de bene esse transcripts

25   that were read to the jury, the removal of materials,

1    objections and so on that were made during the deposition

2    transcripts that were -- when read to the jury, were no

3    longer applicable by agreement.

4         So, in short, your Honor, we would request that the

5    Court, after subject to its hearing from Mr. Jahm or

6    whatever other proceedings or questions you might have,

7    enter an order authorizing the withdrawal of counsel for

8    plaintiff Rashid Jahm.  And we have a proposed order for

9    your review and signature.

10        THE COURT:  Thank you.  I'll hear from Mr. Noland

11   next, if he wishes.

12        MR. NOLAND:  Your Honor, I have no objection to the

13   motion, and I did speak with Mr. Bransdorfer about the

14   concern of keeping track of the trial exhibits and

15   depositions in the event of an appeal of post-trial

16   proceedings, so I have no objection to the motion.

17        THE COURT:  Mr. Jahm, do you wish to be heard?

18        MR. JAHM:  Yes, sir.

19        THE COURT:  This is on the motion to withdraw?

20        MR. JAHM:  First, I think that there will be unfair

21   with me because of the way that the situation that I'm in.

22   And, as you mentioned, your Honor, that the picture that I

23   object on the tampering of the picture, and your Honor

24   argued me that you do not talk.  When your turn comes, your

25   attorney will ask you about the picture.  I waited for him

1     to ask me for which I can tell the jury which the picture

2     he's presenting to, the tampered picture, that not the

3     right picture.  I can prove those things.  I have a lot of

4     -- )

5           THE COURT:  Excuse me.  I don't mean to interrupt

6     you.  We have two separate motions.  One deals with the

7     order that Mr. Noland has and the other is for Mr.

8     Bransdorfer seeking to withdraw.

9           MR. JAHM:  Right.

10          THE COURT:  Mr. Bransdorfer doesn't want to

11    represent you anymore.  That's what I want you to address.

12    Do you want him to represent you or not?

13          MR. JAHM:  I think I don't want him to represent me,

14    because it's a breach of contract.

15          THE COURT:  So, you don't oppose the motion; is that

16    correct?

17          MR. JAHM:  I think I want to Court to listen --

18          THE COURT:  You want to what?  I'm sorry.

19          MR. JAHM:  I want -- I want, your Honor, to look

20    into that as why he want to pull in a situation where I

21    need the most legal kind of help, and he, on the spot here,

22    his position send me a letter for seven days that I have to

23    answer that and the other side he want to pull out that.

24    So, it's kind of something that is professional conduct is

25    not.  He could have done it before the trial.

1           THE COURT:  Just a moment.  Just a moment.  Just a

2      moment.  I'm not going to engage in any discussion with you

3      about Mr. Bransdorfer's representation of you.  The motion

4      that he presents and that you don't object to, he seeks to

5      withdraw from representing you.  According to the rule, you

6      just don't get along, you won't listen and you have your

7      own ideas and he can't possibly give you advice that you

8      won't follow.  The motion to withdraw is granted.  He will

9      not be your lawyer anymore.

10          MR. JAHM:  Right.  But, your Honor --

11          THE COURT:  This is not the forum --

12          MR. JAHM:  Your Honor --

13          THE COURT:  This is not the forum.  This is not the

14     place to engage in discussions about how you think the

15     trial went or how it should have gone.  That is not my

16     role, and this is not the courtroom for that.  And so, I

17     want to tell you, at least that while I appreciate you have

18     strongly held opinions in this area, you can address that

19     in the Court of Appeals if you wish an appeal or some other

20     forum, but this is not the place for it.

21          The other thing I'm obliged to tell you in the

22     context of the next motion is that I received, as you did,

23     from Mr. Bransdorfer this proposed judgment.  And you sent

24     it back to me, because you didn't send a copy of what you

25     sent me to Mr. Noland; did you?

BREIMAYER REPORTING SERVICE

1              MR. JAHM:  No, I didn't send it there.

2              THE COURT:  That's unethical and that's wrong, and

3         let me explain why.  Judges dealing with cases have to do

4         all of their work, as I did in this case as I do in every

5         case, in the open.  When I had a conference about your case

6         away from the bench it was both your lawyer and the other

7         side's lawyer together.  I cannot possibly communicate with

8         you one-on-one without letting the other side know what's

9         going on.

10             You wouldn't like that, Mr. Jahm, if, in this trial,

11        I had conversations about you or this case just with Mr.

12        Noland and didn't tell you about them.  That would be

13        unfair.  What you're asking me to do is have conversations

14        with you and communications by writing me without letting

15        Mr. Noland know what you're doing.  That's not right.

16             MR. JAHM:  Well, your Honor, I understand -- I

17        understood, because I should -- the whole idea was he send

18        me a letter to attorney and client -- I did not have an

19        attorney.  He don't want to represent me.  Within seven

20        days I have to answer the court.

21             THE COURT:  He sent a letter?  Who, he, Mr. Noland

22        sent a letter to your attorney?

23             MR. JAHM:  Right.

24             THE COURT:  He also sent a letter to me.  What Mr.

25        Noland does, he shows both sides.  If you have to respond,

```
 1        I'll listen to your motion.  I'll listen to your side, but
 2        it's his motion so he goes first.  But you can't, when you
 3        write me, you can't write me alone.  I'm not your personal
 4        correspondent.  I'm not your advisor.  I'm the judge, and
 5        what you say to me he has to know about this case.  What he
 6        says to me about the case you have to know about it.  He
 7        has to give you copies of anything he writes me, you must
 8        give him copies of anything you write me.
 9               MR. JAHM:  The reasons, your Honor, I did not is
10        because --
11               THE COURT:  I'm not asking.  You don't have to
12        explain.
13               MR. JAHM:  Okay.
14               THE COURT:  I'm educating you.  You have to take it
15        from me that that's the rule.
16               MR. JAHM:  Thank you.
17               THE COURT:  If you don't know the rule, you were
18        ignorant and now you're not ignorant anymore.  Please sit
19        down.  I'll hear from Mr. Noland next and you'll have a
20        chance to respond to the motion.
21               MR. BRANSDORFER:  Here is the order, your Honor.
22               THE COURT:  Mr. Noland, why don't you proceed on the
23        motion.
24               MR. NOLAND:  Your Honor, we have filed a motion
25        originally a request under the 7-day rule for entry of
```

1          order and for reasons already indicated in the motion

2          proceedings.  That was not agreed to as to form.  We

3          subsequently filed a motion for entry of order.  With the

4          Court's permission, I would like to hand the Court a

5          proposed judgment and show Mr. Jahm a copy.

6                  For the record, this is the identical form of the

7          proposed judgment that had been originally tendered, and we

8          believe that the judgment is appropriate in view of the

9          trial court proceedings and the response of the jury to the

10         verdict form and ask that this order be entered today.

11         Thank you.

12                 THE COURT:  Mr. Jahm, you may respond.

13                 MR. JAHM:  Yes, sir.  May I present this one, sir?

14                 THE COURT:  Yes.  Do you have a copy for Mr. Noland?

15                 MR. JAHM:  Right.  I have a copy for him too.

16                 THE COURT:  This is entitled notice of fraud and

17         defamation and malice by Mr. Craig Noland.

18                 MR. JAHM:  Right.

19                 THE COURT:  Let me read this first.  You say that

20         documents are attached with this question.

21                 MR. JAHM:  Yes, sir.  This is actually the Social

22         Security Administration did, which he --

23                 THE COURT:  Do you have copies of these for Mr.

24         Noland?

25                 MR. JAHM:  No, sir.

1              THE COURT:  What have I told you?

2              MR. JAHM:  I can provide him and give them to him.

3              THE COURT:  I'll only do this once.  I'll make

4    copies for Mr. Noland.  I want to make sure he has

5    everything, like I told you.  Now, I'm going to continue

6    reading this a moment, please.  Now, let me explain

7    something that you may not know and it may change your

8    opinion in this matter.  What was asked of me today by the

9    defense is to enter an order, a copy of which you've

10   received which is entitled judgment for defendants.  Before

11   a person can take an appeal to the proper court to argue,

12   if they want, about how bad the trial was or how unfair the

13   trial was, there has to be an order entered in the court

14   file which says what happened at the end of the trial; do

15   you understand what I've just said?

16             MR. JAHM:  No, I didn't.

17             THE COURT:  I'll try and say it another way.  My

18   clerk is now giving Mr. Noland copies of that which Mr.

19   Jahm has given as the attachment to this motion in your --

20   which you've given me today.  You've raised a number of

21   issues about why you think the trial was unfair; am I

22   correct?

23             MR. JAHM:  Correct.

24             THE COURT:  And I've tried to say to you that this

25   courtroom, this building and me as the judge is not the

1      person or the place where you take this complaint.  If you

2      complain about a trial and it's unfair, the proper place

3      for this is the Court of Appeals.  That's the building at

4      the corner of Ottawa and Michigan.  Those are different

5      judges.  There are three judges.  And they don't hear the

6      trial all over again, they read what you write, they review

7      the transcript of the trial, this woman which is here who

8      is typing everything down, she was here a couple days, my

9      regular court reporter was here couple of days, all the

10     people who were doing that you have to pay them money to

11     prepare a written record of what happened in the trial.

12         So, you take that written record and your complaint

13     and you go to Ottawa Street and you do it according to

14     these rules.  That's why today this notice of fraud and

15     defamation and malice of whatever you call, this thing

16     isn't properly before me and won't be heard, because it's

17     not what a trial court does.  This is what an appeals court

18     does.

19         (MR. JAHM:  Yes, sir.  The reason that I'm bringing

20     it to your attention that before you sign it why I ask the

21     Court to not to sign this, because this is all based on a

22     master minding and bringing this situation of a violation

23     of the due process statute.)

24         THE COURT:  Time out.  I understand.  I read your

25     motion.  But what I told you earlier was this, I am not

BREIMAYER REPORTING SERVICE

1    expecting you liked the result of this trial.  I understand

2    that.  You lost.  You lost big.  No question.  This order

3    only says hey, you know, at the end of trial what was the

4    results, Mr. Jahm lost.  Now, you can't change that fact.

5    You don't like it.  I understand that.

6         But what he's asking, Mr. Noland is saying this a

7    legal way, in a polite way is the judgement, the record.

8    This court file isn't complete because there's nothing on

9    paper in writing which says what happened at the end of the

10   trial.  Before you can go to Ottawa Street and argue your

11   case in front of them, if you follow the rules, there's got

12   to be one of these in there which tells the judges on

13   Ottawa Street what happened at the trial.

14        MR. JAHM:  Right.

15        THE COURT:  So that's why I have to enter the order,

16   because the order says -- or the judgment says Mr. Jahm

17   lost big.  It didn't really say it in those words, but

18   that's what it means.  You somehow don't want me to sign

19   this order.

20        MR. JAHM:  I request, your Honor, it should not be

21   because that's the base of fraud.  It should not be.

22        THE COURT:  That's not a basis to do that.

23        MR. JAHM:  So, I want to know the Court to -- so

24   this way I, please, I can tell the other court which I have

25   been to twice Supreme Court, high court of Lansing.  They

1    say the way you feel you go tell the judge and that's what

2    I did, and I give you the paper.

3    And he mentioned I did (not) get the proof from the

4    Social Security disability, which I've been approved.

5    That's approved there. Then I have a some -- that he

6    mention of 9-11, which is not related to that case was.
     *did not*
     *my own Attorney object*

7    And not even -- your -- he objected and my attorney did not
     *Your Honor object to 911 and being Pakistani*

8    object to that. How that will be affect on the court --
     *care*

9    I mean, the result of this due to your -- naturally

10   on the base of that, the outcome was. Your Honor knows

11   what the outcome is, because based on the evidence that the

12   doctors, based on the evidence that I have that is, I think

13   that this is good case. Even Mr. Kars he admitted he did

14   not put the brake. Why he did not, he didn't know why he

15   didn't put the -- he knows that he's going for -- where he

16   got that.

17   Where the bringing of the two car that they were

18   braking there where the police report there's no two cars

19   that that's a false report. I never saw those police

20   reports. False. Say there's two cars waiting for there.

21   This is because he make up the lie and fabrication master

22   minding. Then I should sit there and back and listen and I

23   should not be heard. I was crying all the time two weeks

24   because I could not say anything to him, because I actually

25   tell my own attorney, I said, please, can you tell him he

```
1    should not attack me personal and bring it to my -- that is
2    a lie.  That's under PRE 405 and 404.  No correct --
3         THE COURT:  Slow down.  You're talking too fast.  My
4    court reporter can't keep up with you, and I don't know
5    what PRE is.  What is PRE?
6         MR. JAHM:  Well, I don't know.  That's what I read
7    it in the law book, which I can explain it, you know.  I
8    thought the Court will know what PRE mean.
9         THE COURT:  Well, I don't know, sir.  I have lots of
10   letters.  I have to learn.
11        MR. JAHM:  I'm sorry.
12        THE COURT:  It has no magic significance.
13   Professional rule of evidence, I don't know what it is.
14        MR. JAHM:  It says -- if you want me to read it, I
15   can read it.
16        THE COURT:  No.  It's just gobbledygook.  It's
17   nothing unless there's a context.  All of these concerns
18   that you have I'm not going to try to dissuade you --
19        MR. JAHM:  Your Honor, who is the court reporter
20   that's reporting that?
21        THE COURT:  This young lady is the court reporter.
22        MR. JAHM:  She is the reporter.
23        THE COURT:  She is taking everything down, but you
24   talk so fast because of your condition that I can't follow
25   you and we're not making a proper record.  Now, I've tried
```

1      to explain to you that your concerns do not affect this

2      motion or judgment being entered, and this has to be

3      entered before you can pursue all of these claims that you

4      have, all these citations about PREs, the 9-11 issue that

5      you have written here.

6                MR. JAHM:  Right.

7                THE COURT:  All of that stuff doesn't go to me, it

8      goes to the appeals court.  Here is the book of rules that

9      lawyers know they have to follow.  You can get this book --

10     I don't know where you get this book, but this is the book

11     of rules.  It's available for purchase.  If you want a copy

12     of -- here's an 800 number where you can buy a copy of the

13     book of rules; do you want to write it down?

14                MR. JAHM:  Right, sir.

15                THE COURT:  All right.  It's 1-800-238-9352.  Do you

16     wish me to repeat it?

17                MR. JAHM:  No, sir.

18                THE COURT:  That's an 800 number.  What you want is

19     the Michigan Rules of Court.  I'm not suggesting you must

20     represent yourself.  I'm also suggesting that people are

21     better off if they're represented by a lawyer, but that's

22     your decision whether you or a lawyer are going to take

23     these complaints to the Court of Appeals.  You or the

24     lawyer have to follow these rules.

25                And I respect that you did not agree with the result

**18**

1          of the trial.  I understand that.  I respect you believe

2          that the reasons are among these and others.  I'm going to

3          put this in the court file, have it received so it becomes

4          a permanent record.  I've given it to my clerk for that

5          purpose now and I'm going to sign the order, because the

6          order merely reflects what happened at the end of the

7          trial, that you lost.

8                    MR. JAHM:  Right.  But I just only mention to the

9          Court because why I think the Court should not sign it,

10          because it was a violation of my constitutional basic

11          rights, and so, on that base, I personally think that this

12          trial should be retrialed here before we go to the appeal

13          court.  And that's all I can say.

14                    THE COURT:  All right.

15                    MR. JAHM:  And the reason is, I cannot afford the

16          attorney and all these whatever it comes it may be -- will

17          be a -- responsibility will be on whoever will be involved

18          with this making any kind of to say on that is, because I

19          financial situation with my other disability that I cannot

20          handle fees which he left to me.  And a situation where I

21          don't have the ability financial to represent -- I mean, go

22          and have attorney and no attorney will take that, and I do

23          request the Court finally, if Court can retrial that at

24          retrial.

25                    I think it would be a benefit to me.  Even in the

BREIMAYER REPORTING SERVICE

| | |
|---|---|
| 1 | failed kind of way I think we can -- it's a question of my |
| 2 | life.  I mean, it's not just something -- I cannot live on |
| 3 | $469, which is the disable, which has been approved by the |
| 4 | state.  (And those are the independent doctors board of |
| 5 | doctors which they award me.)  I think this is something |
| 6 | that is a new proof that has came up and I think, your |
| 7 | Honor, you must consider that before you sign it. |
| 8 | THE COURT:  I will consider all of what you said as |
| 9 | a motion for a new trial at the conclusion of the proofs. |
| 10 | MR. JAHM:  Thank you, sir. |
| 11 | THE COURT:  I will now give you my ruling, because I |
| 12 | presided over the trial, I was there every day just as you |
| 13 | were and I heard all the evidence.  I am convinced, based |
| 14 | on that which I heard and saw from your testimony and the |
| 15 | testimony of Officer Kars, that the -- and this the |
| 16 | simplest language I can say, accidents happen, accidents |
| 17 | happen, and that's exactly what happened here. |
| 18 | Officer Kars proceeding into the intersection and |
| 19 | looking to his left had two cars that had been stopped |
| 20 | ahead of you stopped for that light.  I think I said during |
| 21 | the course of the trial he looked to the left, but nobody |
| 22 | has x-ray eyes to see through those cars to see you, and I |
| 23 | am convinced, based on the testimony that I heard, that |
| 24 | when he looked you were proceeding in the direction towards |
| 25 | the intersection, as you testified, but that his vision of |

1      you was impossible, not because of you and not because of

2      him, but because there were cars that were parked there and

3      didn't see you.  He proceeded, you proceeded, and the

4      accident occurred.

5             Now, there have been a lot of medical testimony

6      about your condition, your cognitive disorder, and I guess,

7      maybe I don't know if that accounts for your excitability

8      as evidence here today, I don't know if that's why you

9      can't get along with your attorney, I don't know if that's

10     why you write these things with Mr. Noland in the motion

11     you have.  I don't know if that has any substance, but I'll

12     leave that to the Court of Appeals.

13            There's also evidence in this case, Mr. Jahm,

14     according to your doctors, according to you, you had

15     another accident after this and hit some pole.  I think it

16     was at 60, 65 miles an hour.  That isn't this trial and I

17     remember the testimony of the doctors to say, sure you have

18     problems, but I'm not convinced that the problems you have,

19     if they exist, are because of this accident.  It could may

20     well have been the other accident.

21            MR. JAHM:  Your Honor, this is the picture.

22            THE COURT:  This is the other accident.

23            MR. JAHM:  This is the picture which I sent Mr.

24     Steve that -- can you present this, because it's not a

25     pole, it's just a little rod that they put the sign in.

| | |
|---|---|
| 1 | That's what I hit there. |
| 2 | THE COURT: Well, still, who knows. |
| 3 | MR. JAHM: And that is what this is, another picture |
| 4 | of what that is. |
| 5 | THE COURT: Wait a minute. You know, I have got to |
| 6 | tell you something, these Polaroid pictures about you going |
| 7 | off the road on the highway and hitting this pole? |
| 8 | MR. JAHM: Right. |
| 9 | THE COURT: That wasn't this trial. |
| 10 | MR. JAHM: No. No. |
| 11 | THE COURT: Please understand me, I'm not going to |
| 12 | try this case and I wouldn't let this evidence in because |
| 13 | it would be confusing to the jury. As it was, your own |
| 14 | witnesses, your own doctors were unable to say when they |
| 15 | saw you after this second accident whether it was the |
| 16 | accident with the police car or the accident subsequently. |
| 17 | And you just don't go off the road at the speed that |
| 18 | you say -- and it was no kind of idle or simple stuff. You |
| 19 | complained about that accident and the effects to your |
| 20 | doctors. It had to be something to do. ⟨I don't think the |
| 21 | patient is often the best judge of his condition.⟩ In your |
| 22 | case -- |
| 23 | MR. JAHM: This is for the record I'm showing the |
| 24 | pictures of -- those are not the pictures which I mentioned |
| 25 | to attorney that you should show the jury, which they |

1    refused to present that picture, which is a pole.  It's not

2    really pole.  It's just a little rod there.

3              THE COURT:  You know what, if you -- if he had tried

4    to present those pictures I would not have let them come

5    in, because you're throwing something else in the front of

6    the jury that they weren't supposed to consider.

7              MR. JAHM:  Your Honor, if he is presenting that too,

8    that accident in front of the jury, where is the justice I

9    cannot present to the jury?  He is saying that his car --

10   my injury is cause of that accident.  I cannot present that

11   picture to the jury.

12             THE COURT:  Rule 403 of evidence would be the

13   answer.  You get the rules of evidence.  I would say it

14   would be my judgment call under rule 403.  If you want to

15   write that down, you can you can look it up once you get

16   the book.  You asked me to review the case.

17             In a thoughtful way, I'm trying to show you the

18   greatest courtesy and patience I know, because you're not a

19   lawyer.  But I'm trying to tell you in the most direct way

20   that I would not grant the motion for a new trial because

21   of my independent decision which reflects which the jury

22   said, that the officer was not negligent.

23             If the officer was not negligent I don't have to get

24   into an inquiry about your injuries, because they could

25   have happened from the accident in the snow.  I kind of

1    think, okay, (that could have happened as a result of

2    hitting Officer Kars.

3              MR. JAHM:  May I show you one thing, your Honor?

4              THE COURT:  No.  Because in either event, in either

5    event, whether your condition, as it was described because

6    of Officer Kars or the subsequent accident because Officer

7    Kars was not negligent you can't recover from the city

8    period.

9              MR. JAHM:  Why not?  It was directed verdict in )

10   front of you.  Mr. Kars admit he did not put the brake and

11   he was -- why not direct verdict and Mr. -- he mentioned

12   that it was in way. (It's a clearly which he had said it's

13   clearly a gross negligence.  Why would -- you did not

14   direct a verdict to the jury.  Why in my case?

15             THE COURT:  Who is going to have the last word?  You

16   keep asking the questions and I keep answering them.

17   There's got to be some finite end.  I'll answer the

18   question, but that's going to be the end of the day in

19   court.  Mr. Payne was not an eye witness.  He was the first

20   testimony.  I heard his opinion.  It was based on

21   circumstances which the jury didn't find to be.

22             In my opinion, Officer Kars did act reasonably as a

23   reasonably careful and prudent person in approaching the

24   intersection.  In my opinion, he looked to the left, as

25   anyone would, and he was obliged to.  And when he looked to

1    the left the vehicles that were parked there obscured his

2    vision.  His response or reaction in that context was

3    reasonable and understandable.  It was not perfect because

4    he cannot see through the cars to see you coming.

5         It was unfortunate you were hurt.  No one ever wants

6    to say, and certainly, I'm not saying that what happened to

7    you was a good thing or that anybody deserved it.  It is an

8    accident.  It was an accident without negligence.

9    Accidents sometimes happen to people who are careful like

10   you, like the officer.

11        It was an accident and not every accident creates a

12   situation where somebody is at fault.  I'm very sorry you

13   were in the accident.  I'm very sorry you suffered then

14   suffered subsequently and continue to suffer.  And I'm very

15   sorry you were in a subsequent accident, which reasonable

16   people could say maybe caused or aggravated your situation,

17   but I don't have to consider that because that subsequent

18   going off the road at 60 miles an hour and it's consequence

19   was not the case before us.

20        Sometimes bad things happen to good people, and

21   there is nobody that you could point a finger to or fault

22   for.  And I'm saying that in this case, forget all the

23   things you didn't like about it.  It was an accident.  And,

24   in this case, the officer was the other part of the

25   accident was not negligent.

```
 1              MR. JAHM:  Okay, sir.  Can I  give you one document
 2      which you can be add to that which the Court which is
 3      before this accident.  It's a Dr. Miller's report, which he
 4      mentioned my cognitive issue before this accident.  And I
 5      want this Court to have this in this file.
 6              THE COURT:  I have that.  You gave that to me.
 7              MR. JAHM:  No, not Mr. Miller.
 8              THE COURT:  I have something from the Social
 9      Security office, something from Gary L. Miller, D.O. That's
10      all I'm accepting.  No more papers, no more time.
11              MR. JAHM:  Right.
12              THE COURT:  No more forum.  Have a nice day and go
13      to the Court of Appeals.
14              MR. JAHM:  How many days I have now?
15              THE COURT:  It's all in the book.  I'm not going to
16      advise you.
17              MR. JAHM:  I sign application today.
18              MR. NOLAND:  Your Honor.  May I indicate for the
19      record I've handed Mr. Jahm the judgment you have for the
20      record today?
21              MR. JAHM:  You can mail me the copy.
22              MR. NOLAND:  Please accept it today.
23              THE COURT:  It's given to you in open court.  That's
24      the same service.  Thank you.  Don't be difficult just
25      because you don't like the man.  In my court, we have
```

BREIMAYER REPORTING SERVICE

```
 1         courtesy on both sides.  You've got a copy of it, now
 2         you're served.  That's it.  Thank you very much.  If you
 3         have papers here, please take them with you.  They may be
 4         important for you. We're in recess.
 5                   MR. NOLAND:  Thank you, your Honor.
 6                   (Motion ended at 10:34 AM)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

STATE OF MICHIGAN )

               )   ss.

COUNTY OF KENT     )


       I certify that this transcript, consisting of 27

pages, is a complete, true and correct transcript of the

motion proceedings held in this case on October 4, 2002.



Dated:   June 10, 2003


_____

Shawn M. Breimayer, CSR

Notary Public, Ionia County, MI

Acting in Kent County, MI

My Commission Expires:  3-20-04

Page

RIVERBEND BODY SHOP, INC.
4141 LAKE MICHIGAN DRIVE N.W.
GRAND RAPIDS, MI 49544
OFFICE: 616-453-7795   FAX: 616-453-7388
FED. I.D. # 38-2337804   FACILITY # F120494   ASA# 00780-00610
CD LOG NO   0004566   DATE 11/01/99

SHOP CONTACT:  HOWERZYL, ALAN            INSP DATE   11/01/99


OWNER      CITY OF WALKER
ADDRESS    4243 REMEMBRANCE
CITY STATE GRAND RAPIDS MI              HOME PHONE  (616)453-6311
ZIP        49544                        WORK PHONE


LIC#       253X38                       VIN         2FAFP71WXWX147363
BODY COLOR BLUE                         MILEAGE     26944


E=NEW PART                    EC=ECONOMY PART              EU=SALVAGE PART
EP=SEE PX REPORT              P=CHECK                      I=REPAIR/ALIGN/SUBLET
L=REFINISH                    N=ADDN'L LABOR OPERATION     TE=PART/PARTIAL REPLACE
ET=LABOR/PARTIAL REPLACE      IT=LABOR/PARTIAL REPAIR      AA=APPEARANCE ALLOWANCE
RP=RELATED PRIOR DAMAGE       UP=UNRELATED PRIOR DAMAGE    *=USER ENTERED VALUE


C*? # 9

7  9 FORD CROWN VICTORIA 4 DOOR SEDAN    P4173A/B OPTNS D/24

OPTIONS:   TWO-STAGE - EXTERIOR SURFACES    TWO-STAGE - INTERIOR SURFACES

| OP | GDE | MC | DESCRIPTION | MFG. PART NO. | PRICE | AJ% | HOURS | R |
|----|-----|----|-------------|---------------|-------|-----|-------|---|
| EC | 006 |    | COVER,FRONT BUMPER | ECONOMY PART | 318.50* |  | 2.0 | 1 |
| L  | 006 | 09 | COVER,FRONT BUMPER | REFINISH |  |  | 4.0 | 4 |
| E  | 279 |    | MLDG,FRONT BUMPER | F8AZ17C829AA | 36.68 |  |  | 1 |
| I  | 030 |    | PANEL,FRONT END | REPAIR/ALIGN |  |  | 2.0* | 1 |
| L  | 030 |    | PANEL,FRONT END | REFINISH |  |  | 2.8 | 4 |
| I  |     |    | SQUARE FT UNIBODY | REPAIR/ALIGN |  |  | 4.0* | 3* |

     6 ITEMS


         MC MESSAGE

         09 INCLUDES 0.6 HOURS MAJOR PANEL TWO-STAGE ALLOWANCE


FINAL CALCULATIONS & ENTRIES
     GROSS PARTS                                   36.68
     OTHER PARTS                                  318.50
     PAINT MATERIAL                               102.00
PARTS TOTAL                                       457.18
     TAX ON PARTS                        @    .000%

FORD CROWN VICTORIA 4 DOOR SEDAN
CD LOG NO   0004566

Page
Date 11/01/99

| LABOR | RATE | REPLACE HRS | REPAIR HRS | |
|---|---|---|---|---|
| 1-SHEET METAL | 34.00 | 2.0 | 2.0 | 136.00 |
| 2-MECH/ELEC | 48.00 | | | |
| 3-FRAME | 45.00 | | 4.0 | 180.00 |
| 4-REFINISH | 34.00 | 6.8 | | 231.20 |
| 5-PAINT MATERIAL | 15.00 | | | |
| LABOR TOTAL | | | | 547.20 |
| TAX ON LABOR | | @ | .000% | |
| SUBLET REPAIRS | | | | |
| TOWING | | | | |
| STORAGE | | | | |
| GROSS TOTAL | | | | 1,004.38 |
| NET TOTAL | | | | 1,004.38 |

ADP SHOPLINK U1471      ES LOG 0004566 DATE 11/01/99 15:59:54 R4.2 CD 09/99
PXN:NN/00/00/00/00  CUM:00/00/00/00
Copyright, 1999 Automatic Data Processing

1.7 HOURS WERE ADDED TO THIS ESTIMATE BASED ON ADP'S TWO-STAGE REFINISH
FORMULA: 20% OF REFINISH HOURS, AFTER OVERLAP, PLUS 0.6 HOURS FOR THE FIRST
MAJOR PANEL, WHERE NOTED.

THIS IS AN ESTIMATE BASED ON OUR INSPECTION.  OCCASIONALLY AFTER THE WORK HAS
STARTED WORN, BROKEN, OR DAMAGED PARTS ARE DISCOVERED.  NATURALLY THIS
ESTIMATE CANNOT COVER SUCH CONTINGENCIES.  PARTS AND LABOR PRICES ARE CURRENT
AND SUBJECT TO CHANGE.

'02/2003 14:10 FAX 248 620 7464   MIDWEST CLAIMS SERVICE

3

STATE OF MICHIGAN
THE CIRCUIT COURT FOR THE COUNTY OF KENT

RASHID A. JAHM,

Plaintiff,                                                    File No. 00-08794-NI

v                                                              HON. DENNIS B. LEIBER

CITY OF WALKER, a Michigan Municipal
Corporation, and EUGENE E. KARS,

Defendants.

Rashid A. Jahm                          Craig R. Noland (P30717)
In Pro Per                              SMITH, HAUGHEY, RICE & ROEGGE
3009 Eastern S.E., Apt. 303E            Attorneys for Defendants
Grand Rapids, MI 49508                  200 Calder Plaza Bldg.
(616) 559-6185                          250 Monroe N.W.
                                        Grand Rapids, MI 49503-2251
                                        (616) 774-8000

## JUDGMENT AWARDING CASE EVALUATION SANCTIONS
## IN FAVOR OF DEFENDANTS AGAINST PLAINTIFF

Defendants filed a Motion requesting the Court to award case evaluation sanctions

pursuant to MCR 2.625 and 2.403(O). In consideration of the Motion, the pleadings, and

responses to the Case Evaluation;

IT IS HEREBY ORDERED AND ADJUDGED that defendants' Motion be granted and that

Judgment be entered in favor of defendants against plaintiff, Rashid A. Jahm, in the amount

of $74,422.53.

IT IS SO ORDERED.

*DENNIS B. LEIBER*

Hon. Dennis B. Leiber, Circuit Judge

Attest:  A True Copy

DB

SMITH, HAUGHEY, RICE & ROEGGE, A Professional Corporation

EZ7.0N   D006

01/02/2003   12:28   3032590732T → 91512541355T

4

## STATE OF MICHIGAN
## ATTORNEY GRIEVANCE COMMISION

Dear Sir,

I am Rashid Jahm Filling complaint against attorney Craig Noland for his
plotting a conspiracy using his personal resources by altering, tampering picture of the
scene of accident and altering document which was occur with police car on Oct. 31.1999
while he was representing defendant city of walker.

I request to investigate the pictures that he presents to court during trial.

Offering boat rides to insurance agent who was at the mediation conference meeting in
front of the police chief of walker police.

Receiving $ 75000 for the case from the insurance company. Which is lot. Not including
other expenses, which will be investigated.

Misconduct of professional duty to legal system and to public and to both parties.

His Violation of code of ethics that he owes to society.

I request to Board to ask to provide pictures of the scene and the police report and why he
brought police chief with uniform every day sit next to him in the trial during witness
hearing. Why he is not permitting his professional insurance (Great American) to disclose
his policy coverage what kind of coverage he has.

Respectfully                    DT: - 10-15-03

Rashid Jahm
49 Hallenan ave
Lawrence, Ma. 01841
978-2548-9419

**STATE OF MICHIGAN**
**ATTORNEY GRIEVANCE COMMISSION**

MARQUETTE BUILDING
243 W. CONGRESS, SUITE 256
DETROIT, MICHIGAN 48226-3259

5

## REQUEST FOR INVESTIGATION OF ATTORNEY:

Craig Noland (P30717) Attorney
(Name of Attorney)

200 Calder plaza Building
(Street and Number)

250 Monroe, NW
(City and State) (Zip Code)

Grand Rapids, Mi. 49503-2251
(Area Code)     (Telephone Number)
616 — 774 — 8000

Date attorney was hired/appointed?_____
Type of case: (divorce, criminal, probate, etc.) __civil__
Have you previously complained to our office about this attorney? __No__ When?_____

## STATEMENT OF FACTS
(Please be specific. You may attach additional pages if necessary.)

Mr. Craig Noland was defendent in the case
in the court of Judge Dennis Leiber.
where Mr craig conspire with other by violating
code of Ethic which he owed to his professional ad
to Legal system. Alter, Tampering, conspiracy,
fraud, Misleading downgrading to other, falsifying state
ment for his own financial gain, taking law in his
hand to cross others bondries. I have all the document
prove it. Thank you for your cooperation  Sincerly
Rashid Jah

**I request an investigation by the Attorney Grievance Commission.**

Date: 10 — 15 — 03

*You must provide two (2) completed
copies of this form and two (2)
copies of all attachments. We cannot
process unsigned complaints.*

(Signature)
RASHID  A  JAHM
(Name - type or print)
49 Halleman  Ave
(Street and Number)
Lawrence,  MA - 01841-
(City and State)      (Zip Code)      (Telephone Number)
978-258-9419

Mr. ✓
Mrs.___
Ms.___

# *Magnetic North Consulting Services, Inc.*



1345 MONROE N W
GRAND RAPIDS, MICHIGAN 49505
616.336.8628 or 616.336.8556
FAX 616.336.8657

GARY McDONALD, PRESIDENT
ACCIDENT RECONSTRUCTION
CONSULTANT

September 5, 2002

Craig R. Noland
SMITH, HAUGHEY, RICE & ROEGGE
200 Calder Plaza Building
250 Monroe Avenue NW
Grand Rapids, MI 49503-2251

**INVOICE NO.: 49-01B4**

    **Re:    Rashid Jahm v City of Walker and Eugene E. Kars**

Dear Mr. Noland:

    I have completed my billing to date reference the above matter. If you have any questions, please contact me.

| | | | |
|---|---|---|---|
| 09/03/02 | Perpetration for testimony in Kent County Circuit Court. | 2.5 hrs | $  337.50 |
| 09/04/02 | Meeting with Attorney Noland. | 3 hrs | 450.00 |
| 09/05/02 | Appearance in Kent County Circuit Court. | 4 hrs | 600.00 |
| | Administrative Aid: | | $    40.00 |

        **TOTAL DUE:**   **$1,427.50**

Respectfully,

Federal ID #
38-3094655

*Gary J. McDonald*

Gary J. McDonald

GJM/sb
49-01b4.wpd

SMITH HAUGHEY RICE & ROEGGE

A Professional Corporation
ATTORNEYS AT LAW

L. Roland Roegge
Thomas F. Blackwell
P. Lawrence Mulvihill
Thomas R. Behm
Fred H. Reinhardt
Lance E. Mather
Charles F. Behler
Gary A. Rowe
Edward R. Stein
William W. Jack, Jr.
William J. Hondorp
Thomas M. Weibel
James O. Black
B. Thomas McCarthy, Jr.
Glenn W. House, Jr.
Craig R. Noland
Paul M. Oleniczak
Craig S. Neckers
George F. Bearup
John C. O'Loughlin
Anthony J. Querio

A. B. Smith, Jr
David O. Haughey
Lawrence P. Mulligan
Albert J. Quick
Brenda Jones Quick
Of Counsel

John M. Kruis
Patti Van Oostenburg
Mark P. Bickel
Dale Ann Iverson
William R. Jewell
Jon D. Vander Ploeg
Patrick F. Geary
R. Jay Hardin
Terence J. Ackert
Brian J. Kilbane
Charles B. Roston
Robert C. Stone
Robert W. Tubbs
Douglas G. Powe
Richard C. Kraus
Albert J. Engel, III
Phillip K. Mowers
Carol D. Carlson
Marilyn S. Nickell Tyree
Christopher R. Genthner
Beth S. Kramer

Robert V. V. Rice
1899-1982

Robert M. Knice
Jeffrey R. Westcott
Aileen M. Leipprandt
David J. DeGraw
Robert W. Parker
Paul T. Jarboe
Jeffrey E. Gwillim
Randall L. Velzen
John R. Oostema
Matthew L. Meyer
Martha P. Forman
Todd W. Millar
Veronica A. Marnich
Karl W. Butterer, Jr.
Garrett J. TenHave-Chapman
J. Joseph Russo
Peter J. Boyles
Thomas R. TerMaat
William A. Sikkel, IV
Rachel Brochert Roe
Jo Beth Earl

Laurence D. Smith
1913-1980

Angela T. Ross
Eric W. Phelps
Kevin M. Lesperance
Brian A. Nettleingham
Heather R. Blanton-Dyle
Jeffrey J. Noorman
William L. Henn
Kirk W. Morgan
Carrie J. Sodar
Mark A. Gilchrist

Also licensed in:
1 Colorado
2 District of Columbia
3 Florida
4 Illinois
5 Indiana
6 Pennsylvania
7 Wisconsin
8 Georgia

Michael S. Barnes
1944-1989

200 Calder Plaza Building
250 Monroe Avenue, N.W.
Grand Rapids, Michigan 49503-2251
Telephone 616-774-8000
Fax 616-774-2461

1400 Abbott Road, Ste. 410
East Lansing, Michigan 48823-1962

202 E. State Street, Ste. 100
Traverse City, Michigan 49684

320 N. Main Street, Ste. 101
Ann Arbor, Michigan 48104-1127

http://www.shrr.com

April 16, 2002

Charles VanDyken, DDS, MS
2020 Raybrook Street, S.E.
Grand Rapids, MI  49546

*Sub 4-29-02*
*w/ x rays?*

RE:    Rashid A. Jahm
       DOB:  06/25/51
       SSN:  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
       Our File No:  70483

Dear Dr. VanDyken:

Enclosed is an executed Medical Authorization requesting any records you may have concerning Mr. Jahm with respect to any illness or injury, including medical, hospital or clinical records and reports and radiology films. Please note that we are requesting a copy of your actual office records, as opposed to a narrative report. Additionally, we ask that you forward to the undersigned a copy of your records and films regarding Mr. Jahm within the next two weeks. We will, of course, reimburse you for reasonable photocopying expenses. Should the fees exceed $100.00, please contact me prior to copying the records.

Should you have any questions regarding our request and/or the enclosed authorization form, please do not hesitate to contact the undersigned. My direct dial telephone number in Grand Rapids is 616/458-9463.

*look for 2nd*