1

UNITED STATES DISTRIC COURT
District of Massachusetts
1 courthouse way, suite 2300
Boston, Massachusetts. 02210
617-748-9152

| | |
|---|---|
| Rashid Jahm | Case No:05CV11638-JLT |
|     Pro se | **Jury Trial Demanded** |
|   Plaintiff | |

Vs
Shawn M. Breimayer CSR (6888)
John A. Christopher
Spitzer, Christopher & Arvanites
Attorney for defendant
Northwoods business Park
199 Rosewood drive, suite 350
Danvers, MA. 01923
978-777-5100
    Defendant

### Plaintiff Answer to Defendant Shawn M. Breimayer Motion For Summery Judgment

NOW COME plaintiff will like to clarify that Breimayer is not regular Dennis Leiber reporter Dale is his reporter. But Breimayer was used when ever need for altering the transcript. She did report of Craig Noland statement in front of jury. She did report on Plaintiff's treating doctor testimony Dr. Fox. She transcribed of hearing Oct, 4, 2002 even though She was off on Oct. 4, 2002. She was called to specially Oct. 4, hearing. Even though reporter Pat was available that day to transcribe that report. Pat was Court reporter on that day. Can defendant Dennis Leiber and Breimayer can give affidavit under oath that Breimayer was schedule reporter on Oct. 4, 2002 to work. And Reporter pat was not working on Oct. 4, 2002. Following are the few proof below.

1. Breimayer's partial transcript of trial of dated 8-28-02 before Dennis Leiber  Commence start at 9:43 and Jury Exited at 9:44 EXHIBIT (A) Page 3  Altered and tampered

2. Court in recess at 9: 52 AM Court back in session at 10: 24 AM EXHIBIT (A) Page 9. Breimayer certify this transcript consisted of 10 pages.

2

2. Court in recess at 9: 52 AM Court back in session at 10: 24 AM EXHIBIT (A) Page 9. Breimayer certify this transcript consisted of 10 pages. Breimayer transcribe 10 pages in 8 minutes. Which is less than one minutes. Altered and tampered

3. Breimayer Commenced at 9: 53 AM on 8-28-2002 plaintiff's treating physician Dr. Fox. EXHIBIT (B) Page 3. Breimayer certify 43 pages complete and ended at 11:03 AM. Breimayer transcribe 43 pages in 70 minutes. Which is less than 2 minutes. 43 pages of transcript of Dr. Fox testimony was filed on 9-06-02 dated transcript of 08-28-02 so that mean all 10 pages are altered.

4. How come two partial reports and Court in recess at 9:52 AM 8-28-02 and court back in session at 10:24 AM and Dr Fox testimony started at 9:53 AM on 8-28-02 Altered and tampered EXHIBIT (B) Page 9 The reporter is duty-bound to make no material change in the transcript that would have an adverse effect upon any party or parties.

5. Plaintiff requesting a copy of the digital recording on which the transcript was based

WHEREFORE Plaintiff requests a sworn statement with proof from defendant Leiber and Breimayer if Pat was not reporter for that day. And request to Hon. Court for relief to plaintiff from defendant and plaintiff request jury trial. So jury can decide the relief for plaintiff. And penalize the defendant in a way that it should not happen again.

    Dated: March 03-06　　　　　　　　　Rashid Jahm
　　　　　　　　　　　　　　　　　　　　　　　　Pro se

　　　　　　　　　　　　　　　　　　　　　　　　49 Hallenan Ave
　　　　　　　　　　　　　　　　　　　　　　　　Lawrence, MA.01841
　　　　　　　　　　　　　　　　　　　　　　　　978-258-9419

8-28-02

1

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

RASHID A. JAHM,

    Plaintiff,

Case #00-08794-NI

v

CITY OF WALKER, A Michigan Municipal
Corporation and EUGENE E. KARS,
    Defendants.

PARTIAL TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE DENNIS B. LEIBER
Wednesday, August 28, 2002 - Grand Rapids, Michigan

APPEARANCES:

FOR THE PLAINTIFF:    Stephen Bransdorfer (P11133)
                        BRANSDORFER & RUSSELL,
                        161 Ottawa Ave NW, Ste 411-S
                        Grand Rapids, MI  49503
                        (616) 774-8422

FOR THE DEFENDANT:    Craig R. Nolan (P30717)
                        SMITH, HAUGHEY, RICE & ROEGGE
                        200 Calder Plaza Building
                        Grand Rapids, MI  49503
                        (616) 774-8000

ORIGINAL
REC'D & FILED
JUDGE SORT

OCT 3 0 2002

17TH JUDICIAL CIRCUIT

Reported by:    Shawn M. Breimayer, CSR (6888)

8-28-02

```
                                                                    1
                      STATE OF MICHIGAN

        IN THE CIRCUIT COURT FOR THE COUNTY OF KENT
```

RASHID A. JAHM,

      Plaintiff,                          Case #00-08794-NI

v

CITY OF WALKER, a Michigan Municipal
Corporation and EUGENE E. KARS,
      Defendants.

               PARTIAL TRANSCRIPT OF TRIAL
         BEFORE THE HONORABLE DENNIS LEIBER
  Wednesday, August 28, 2002 - Grand Rapids, Michigan

APPEARANCES:

FOR THE PLAINTIFF:    Steve Bransdorfer (P11133)
                       BRANSDORFER & RUSSELL, LLP
                       161 Ottawa, NW Ste 411-S
                       Grand Rapids, MI   49503
                       (616) 774-8422

FOR THE DEFENDANT:    Craig R. Noland (P30717)
                       SMITH, HAUGHEY, RICE & ROEGGE
                       200 Calder Plaza Building
                       Grand Rapids, MI   49503
                       (616) 774-8000

**ORIGINAL**

Reported by:    Shawn M. Breimayer, CSR (6888)

8-28-02

2

1         TABLE OF CONTENTS

2    WITNESSES:
         (None)
3

4

5

6

7

8    EXHIBITS:
         (None marked)
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              (Commenced at 9:43 AM)
2         MR. NOLAN:  Your Honor?
3         THE COURT:  Yes.
4         MR. NOLAN:  May I approach the bench with counsel?
5       (Discussion between Counsel and Judge off the record)
6         THE COURT:  Yes.  Ladies and gentlemen, I'm going to
7    excuse you for a moment.  The clerk will let you out.
8    Please give the pads to your clerk, and when the matters
9    concludes we'll call for you.  Thank you.
10         (Jury exited the courtroom approximately 9:44 AM)
11         THE COURT:  What is the matter you wish to address,
12   Mr. Nolan?
13         MR. NOLAN:  Yesterday during cross-examination I had
14   sought to introduce a letter prepared by Mr. Jahm to State
15   Farm Insurance.
16         THE COURT:  Yes.
17         MR. NOLAN:  Complaining of bad language and $10,000
18   a day, and I hoped to introduce it for purposes of
19   developing the evidence of exaggeration and some other
20   things.
21         In this case, your Honor, I believe the next
22   witness, or eventually a witness is going to be called by
23   the name of Dr. Phillip Fox, who is a psychiatrist.  I did
24   take Dr. Fox's deposition about six weeks ago or so, and I
25   wanted to alert the Court that when Dr. Fox did his initial

9

MR. NOLAN: Thank you.
    (Court in recess at 9:52 AM)
    (Court back in session at 10:24 AM)

10

STATE OF MICHIGAN )
                  ) ss.
COUNTY OF KENT    )

      I certify that this transcript, consisting of 10 pages, is a partial transcript of the trial proceedings and held in this case on Wednesday, August 28, 2002.

Dated: October 30, 2002

*[signature]*
Shawn M. Breimayer, CSR
Notary Public, Ionia County, MI
Acting in Kent County, MI
My Commission Expires: 3-20-04

**RVICE**

```
                                                                    1
                         STATE OF MICHIGAN

            IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

  _____

 RASHID A. JAHM,

           Plaintiff,                        Case #00-08794-NI

 v

 CITY OF WALKER, a Michigan Municipal
 Corporation and EUGENE E. KARS,
           Defendants.

  _____



                  PARTIAL TRANSCRIPT OF TRIAL
              BEFORE THE HONORABLE DENNIS LEIBER
       Wednesday, August 28, 2002 - Grand Rapids, Michigan

 APPEARANCES:

 FOR THE PLAINTIFF:     Steve Bransdorfer (P11133)
                        BRANSDORFER & RUSSELL, LLP
                        161 Ottawa, NW Ste 411-S
                        Grand Rapids, MI  49503
                        (616) 774-8422

 FOR THE DEFENDANT:     Craig R. Noland (P30717)
                        SMITH, HAUGHEY, RICE & ROEGGE
                        200 Calder Plaza Building
                        Grand Rapids, MI  49503
                        (616) 774-8000


                                                    ORIGINAL



 Reported by:   Shawn M. Breimayer, CSR (6888)
```

8-28-02

**Page 3**

(Commenced at approximately 9:53 AM)
 MR. BRANSDORFER: I'd like to call Dr. Stanley Fox, and I'll step out and get him with the Court's permission.
 THE COURT: Certainly. Good morning, sir. Could you please come forward and stand at the chair to my left, your right. The witness chair. Raise your right hand, please. Do you solemnly swear or affirm to tell the truth, the whole truth and nothing but the truth, so help you God?
 THE WITNESS: Yes.
 THE COURT: Please be seated. The microphone in front of you is intended to assist you in enabling you to be heard by the jury. You don't have to touch it, you don't have to speak into it as long as it's fairy close to your mouth. If the jury can't hear you, let me know.
 MR. BRANSDORFER: May I proceed, your Honor?
 THE COURT: You may, thank you.

DIRECT EXAMINATION
BY MR. BRANSDORFER:
Q. Dr. Fox, would you please tell the jury your full name and your profession?
A. Phillip Stanley Fox, and I am a psychiatrist.
Q. And where is your practice at the present?
A. I practice with a private practice group, Psychiatric Associates of West Michigan. We're located on the Pine Rest Campus in Cutlerville.

**Page 4**

Q. Would you please tell the jury your educational background?
A. I went to Wheaton College for undergraduate and Ohio State University for medical school and the University of Rochester, New York for psychiatric residency.
Q. And how long have you served as a psychiatrist?
A. 14 years since completing residency.
Q. Would you tell the jury where you have practiced during those 14 years?
A. It's been in Grandville 14 years. About nine at Pine Rest and five in private practice.
Q. Would you explain to the jury what type of a facility Pine Rest is?
A. Pine Rest is the main part of it where I was working for the first three years doing inpatient work with people that needed 24 hour care the most part of a short term basis. I do deal with depression, psychosis, those problems. The next five or six years was outpatient, meaning the most part were able to function, but need to be seen on a regular basis.
Q. Is Pine Rest a hospital facility?
A. Part of it is; yes.
Q. And would you tell the jury if you served in any capacity as a --
A. I was president of the medical staff two years.
Q. And what years were those?

**Page 5**

A. Boy, I can't remember. It would have been about '95 to '97.
Q. May I show you what is part of -- that's your curriculum vitae?
A. Yes.
Q. And for the record, that is going to be shown to you as part of Plaintiff's Exhibit Number 23?
A. Yes. It was '95 to '97, and then, I'm still president of the symptomatic services there, which primarily means the medical director for ECM Services.
Q. How many doctors serve at that hospital that you are describing as the president?
A. 25.
Q. 25 doctors?
A. Correct.
Q. All right. And to refresh your recollection, am I correct that you served as medical director at one point?
A. For a small part of it, but not for the entire hospital.
Q. All right. What part of it did you serve as medical director?
A. I think that's referring to the long term treatment unit. There was primarily young adults with severe illnesses.
Q. And when you said primarily young adults, could you tell the jury what you mean by young adults with severe illnesses?

**Page 6**

A. Young adults, meaning people from 18 to 35 or so. Many of whom had schizophrenia, which is a disorder where they are psychotic, out of touch with reality, then occasional severe depressions and severe excessive compulsive disorder so much that they were not able to function in school or in the job setting.
Q. And what's the nature of the treatment that is given to patients of that type?
A. Well, there's all kinds.
Q. If you could tell the jury how those things are treated?
A. Well, I guess on the -- in patient setting, at that time you had a longer term care model, which would involve all kind of occupational rehabilitation and anxiety management groups, education about medications and the illness, and then, the psychiatrist, of course is focused on the medication portion. There's many kinds of treatment. There's mood stabilizers on bipolar illness antidepressants to antipsychotics for the portion of the symptoms that a person is out of touch with reality.
Q. Have you had any of -- any works published? Technical works?
A. I did a little bit in medical school.
Q. Could you tell the jury, if you would, what kind of works you mean?
A. We were doing work on animal models for spinal trauma and

### Page 39

```
 1          THE COURT: Certainly.
 2                  REDIRECT EXAMINATION
 3   BY MR. BRANSDORFER:
 4   Q.  Would you tell the jury, based on what you were asked by
 5       Mr. Noland the reason that a -- and I'll use the term a
 6       closed head injury -- can occur in an automobile accident
 7       even, even if the person involved does not, in fact, strike
 8       any object; what is the reason for that medically?
 9   A.  Well, the reason is that, essentially, the brain hits
10       against the skull, that what has to happen for there to be
11       a brain injury is for the brain to hit something hard.
12       Now, if in an accident where a person is restrained or
13       where they stop suddenly or they are hit suddenly from one
14       side to the other the car and the restraining system can
15       force their body to move and their head to move, their
16       skull to move, but the brain has momentum. So,
17       essentially, when the skull moves the brain has to hit up
18       against the side of the skull to change with it, and that
19       can bruise a part of the brain or there can be some kind of
20       stretching of some of the neuron pathways as the brain
21       moves and stretches to fit into the skull.
22   Q.  I'd like to show you what has been marked as part of
23       Collective Exhibit 4, it is a photograph of the automobile
24       after the collision; am I correct you have not seen this
25       before?
```

### Page 40

```
 1   A.  Nope.
 2   Q.  And I'm -- and that's Rashid Jahm sitting there. Based on
 3       what you said, can you tell the jury whether or not this
 4       kind of a collision could result in what Mr. Jahm has been
 5       telling you?
 6          MR. NOLAND: Your Honor, I'm going to object to the
 7       question. Lack of foundation when he said this kind of
 8       collision. I think we need more information than to ask
 9       that type of question.
10          THE COURT: Well, since the witness has testified he
11       has no personal knowledge of the collision, perhaps you
12       would rephrase in the form of a hypothetical.
13          MR. BRANSDORFER: Thank you, your Honor.
14   BY MR. BRANSDORFER:
15   Q.  Because you don't have information I'd like to
16       pose this hypothetical question for you. Assume that a
17       person is driving a car and is struck by another car from
18       the passenger's side, and the person that is driving the
19       car is going from 40 to 45 miles per hour, and that,
20       hypothetically, the car that strikes that car had been
21       stopped and is then starting to move and strikes that car
22       going 40 to 45 miles an hour, and assume that it struck not
23       just once but twice as the car that's going 40 to 45 miles
24       an hour is proceeding. Assume that hypothetical, and
25       assume that the person, the driver of the car that was
```

### Page 41

```
 1       struck, reports that he has problems in thinking that arise
 2       later on. Hypothetically, you -- and based on that, tell
 3       the jury whether or not that hypothetical situation can
 4       involve a closed head injury to the driver?
 5   A.  I don't honestly think I can give an opinion on that.
 6   Q.  Just tell the jury why you can't?
 7   A.  Well, as a psychiatrist I'm usually not involved in the
 8       acute phase of these things. I'm usually involved down the
 9       road, and I have not tried to correlate accidents, the
10       actually physical damage to the car or the speed with the
11       head injury. That's not the part of whole process that I'm
12       involved in. So, I don't have an informed opinion on that.
13   Q.  Thank you. I appreciate that. Let's go back now to the
14       question you were asked by Mr. Noland. He asked you
15       whether you had to rely, if you remember, on what you were
16       told by Rashid Jahm; correct?
17   A.  Correct.
18   Q.  Would you tell the jury what you believed, that Rashid Jahm
19       was telling the truth or was he faking?
20   A.  I think he has doing his best to communicate with us in an
21       accurate way about what he's experienced. As I mentioned
22       in the deposition, I actually look for symptoms. I have a
23       list of symptoms that I go through and I say do you have
24       this problem and this problem and this problem, and I'm
25       looking for those because those symptoms guide treatment.
```

### Page 42

```
 1       I'm actually kind of relieved when people have them,
 2       particularly, if they fit a pattern that's treatable. I
 3       think, now I know what to do in terms of medications. He
 4       has not endorsed many symptoms. Many patients that are
 5       trying to present themselves as being impaired endorse a
 6       lot. Everything they say, yeah, I got that, yeah, I've got
 7       that. He's been very selective in discriminating in terms
 8       of what he's presented in terms of symptoms.
 9          MR. BRANSDORFER: Thank you. I have no other
10       questions.
11          THE COURT: Mr. Noland.
12          MR. NOLAND: I have no other questions.
13          THE COURT: May the witness be excused?
14          MR. BRANSDORFER: Yes, your Honor.
15          THE COURT: Any objections?
16          MR. NOLAND: No, your Honor.
17          THE COURT: Thank you. You may step down.
18              (Ended approximately 11:03 AM)
```

8-28-02

```
 1  STATE OF MICHIGAN )
 2                    ) ss.
 3  COUNTY OF KENT    )
 4
 5          I certify that this transcript, consisting of 43
 6  pages, is a complete, true and correct transcript of the
 7  trial proceedings and testimony of Dr. Fox, held in this
 8  case on August 28, 2002.
 9
10
11  Dated: September 6, 2002
12
13  /s/ Shawn M. Breimayer
14  Shawn M. Breimayer, CSR
15  Notary Public, Ionia County, MI
16  Acting in Kent County, MI
17  My Commission Expires: 3-20-04
18
19
20
21
22
23
24
25
```

BREIMAYER REPORTING SERVICE
(616) 794-1009